**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

NOV 24 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

|  |  |  |
|---|---|---|
| MATTHEW D. MCMASTER, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. |
| | ) | |
| v. | ) | |
| | ) | |
| GEORGE G. BRANTLEY, and | ) | **1:25 -CV- 6726** |
| CHRISTOPHER HANSARD, | ) | |
| | ) | |
| Defendants. | ) | |

---

## COMPLAINT FOR DECLARATORY RELIEF

---

### I.    INTRODUCTION

1. This action under 42 U.S.C. § 1983 seeks prospective declaratory and narrowly tailored self-executing administrative relief to prevent ongoing and imminent violations of Plaintiff's First and Fourteenth Amendment rights arising from retaliatory misuse of administrative judicial authority.

2.    Plaintiff regularly practices in Cobb County Superior Court. Defendant Judge George G. Brantley is in a class of individuals that have been repeatedly declared disqualified from a matter involving Plaintiff and his client Robert Murray, yet Defendants have recently resumed jurisdiction and administrative control over such matters despite those disqualification orders.

1

3.    Cobb County Superior Court administrative staff members Brett Conway and Audrey Hastings, acting in an administrative capacity under the supervision of Defendant Christopher Hansard and under authority by delegation from Defendant Brantley, have participated in and facilitated administrative actions affecting Plaintiff's protected advocacy. Defendant Hansard—Cobb County Superior Court Administrator—facilitated Judge Brantley's reassignment to Plaintiff's case and hearing scheduling, knowing of Judge Brantley's disqualifications.

4.    Plaintiff does not ask this Court to review, alter, or supervise any state-court adjudicative decision—nor to intervene in any pending state proceeding. Plaintiff seeks only constitutional declarations governing retaliatory administrative conduct.

5.    **This is not a dispute about the administration of a single case.** It is a targeted pattern of pursuit by a state judicial officer (Brantley) who has repeatedly attempted to exert jurisdiction over the Plaintiff personally in retaliation for Plaintiff's protected speech, political candidacy, exercise of right to petition and federal litigation against Defendant Brantley's interests. Absent federal relief, Defendants' conduct threatens ongoing constitutional injury in Plaintiff's active representation of his clients.

2

6. Most recently in *Murray v. Hill*, Case No. 23104461, Defendant Brantley inserted himself in defiance of multiple disqualification orders. Plaintiff immediately filed his intent to withdraw from representation within 24 hours of Judge Brantley's assignment to the case. Plaintiff filed a motion to withdraw from representation of Robert Murray from that case. However, Judge Brantley has since refused to rule on Plaintiff's motion to withdraw, thus keeping Plaintiff hostage in that case. There is no order that Plaintiff can appeal to protect his rights through any state appellate process.

7.    Plaintiff reserves the right to seek leave to supplement or amend this Complaint to identify additional actors and claims as further facts and discovery warrant.

## II.    PARTIES

8. Plaintiff **Matthew D. McMaster** is a citizen of Cobb County, Georgia, an attorney in good standing, and current counsel in Case No. 23104461.

9.    Defendant **George G. Brantley** is an active Cobb County Superior Court Senior Judge. *See* (Exhibit A) (available at https://www.cobbcounty.gov/courts/superior-court/judges/senior-judges). Even when presiding in other counties as some senior judges do, Judge Brantley uses Cobb County staff and resources. Defendant Brantley is sued solely in his official capacity for prospective declaratory relief.

3

10. Judge Brantley was a formerly named defendant in Case No. 1:24-CV-3436-JPB.

11. Defendant **Christopher Hansard** is the Court Administrator for Cobb County Superior Court. He is sued solely in his official capacity for prospective declaratory relief addressing administrative functions in judge assignments and resource allocation.

12. On information and belief, Defendant Hansard is also the supervisor of Audrey Hastings who is a Senior Judge Administrator assisting Cobb County senior judges. Hastings assists Cobb County senior judges in matters before the Cobb County Superior Court and when they are presiding in other counties. Hastings does not assist non-Cobb County Superior Court judges who preside in other counties. Defendant Hansard is also the supervisor of Karli Smith who is the named defendant in Case Nos. 1:25-CV-4077-JPB and Brett Conway who was a former defendant in 1:24-CV-3436-JPB.

## III.   JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343, for declaratory relief pursuant to 28 U.S.C. §§ 2201-2202, and under 42 U.S.C. § 1983, as this action seeks to protect rights secured by the United States Constitution.

4

14. Venue is proper under 28 U.S.C. § 1391, as the events giving rise to the claims occurred within Cobb County, which is within the jurisdiction of the Northern District of Georgia.

## IV.    BACKGROUND

### A. Personal Hostility Toward Plaintiff as Counsel.

15. Between 2021 and 2024, Plaintiff publicly criticized judicial-assignment practices and biased recusal procedures within the Cobb County Superior Court. Plaintiff's criticisms were expressed in protected First Amendment activity including campaign speech, public statements, and the filing of judicial-recusal motions. *See e.g.*, (Exhibit B) (available at https://thewikilaw.org/wiki/index.php/The_Lion%27s_Den).

16. Following Plaintiff's protected activity in Fulton County Superior Court (i.e., multiple recusal motions and a petition for mandamus against the entire Fulton County Superior Court Bench), Defendant Brantley entered one of Plaintiff's cases and began exhibiting behavior toward Plaintiff suggesting personal hostility and retaliation, including irregular scheduling decisions, unnecessary comments from the bench directed personally at Plaintiff (and not anyone else), and rulings inconsistent with neutral practice norms.

17. Beginning on January 2, 2024, Defendant Brantley displayed hostility toward Plaintiff regarding a recusal denial order that Plaintiff intended to raise on

5

appeal from the previous Fulton County Superior Court judge presiding over the matter. Specifically, in *Paramount Properties v. Jackson* in Fulton County Superior Court, Case No. 2022CV365529, Judge Brantley made remarks directed at Plaintiff in open court such as, "You're playing games with me, Counsel. Listen to me. You know me. You know what I will do. Do you not? Is that door locked?" and "Don't dance with me." (Exhibit C). Judge Brantley then called a recess and warned Plaintiff to "be prepared to bring a toothbrush," implying potential overnight detention. *Id.* Judge Brantley did not show the same hostility to the opposing counsel.

18.    On January 8, 2024, Judge Brantley stated in open court: "I am not happy with you. I told you just to brief the standing issue. You gave me the whole sink." (Exhibit D). Judge Brantley's comment in open court was without merit. Rather, Plaintiff merely attached his recently filed appellate brief to an argument brief required by Judge Brantley in the trial court for the purpose of ensuring that appellate jurisdiction was preserved despite Judge Brantley appearing to want Plaintiff to argue matters that were on appeal. *See* (Exhibits C and D). Plaintiff's argument brief required by Judge Brantley was not longer, and was arguably shorter, than the opposing party's brief *but for* Plaintiff's "exhibit" containing Plaintiff's recently filed appellate brief into the Georgia Court of Appeals, Appeal

6

No. A24A0624—that appeal is no longer pending. Judge Brantley did not show the same hostility toward the opposing counsel.

19. In March and April of 2024, Plaintiff filed multiple recusal motions against Judge Brantley in that Fulton County Superior Court case and all were denied by Judge Brantley *without* **re-assignment** under USCR 25.3. *See In re Murchison*, 349 U.S. 133, 136 (1955) ("No man can be a judge in his own case."). Those motions could not be appealed by Plaintiff because Plaintiff was forced to withdraw from that action in August of 2024 due to additional retaliatory conduct by Judge Brantley that *chilled* Plaintiff's willingness to continue representing his client in that case. It was that same retaliatory conduct that caused Plaintiff to initiate Case No. 1:24-CV-3436-JPB on August of 2024.

### B. Plaintiff Engages in Protected Speech and Public Criticism of Cobb Judges.

20.    Plaintiff, as a citizen and practicing attorney in Cobb County, has participated in lawful public advocacy concerning Cobb County judges and Cobb County senior judge assignment practices, including but not limited to:

(a) Challenging Cobb County Superior Court Judge, Robert D. Leonard II in the May 2022 election;

(b) Postings on his campaign website. *See e.g.* (Exhibit B) (https://thewikilaw.org/wiki/index.php/The_Lion%27s_Den); and

(c) Published online articles on thewikilaw.org. *See e.g.* (Exhibit E)

7

(https://thewikilaw.org/wiki/index.php/Fulton_Judiciary_Weaponizes_Pr oject_ORCA).

### C. Plaintiff Ran Again for Judicial Office – May 2024.

21.  In May 2024, Plaintiff was a candidate for Cobb County State Court Judge, against the Honorable Carl Bowers, primarily because of Judge Bowers' personal relationship with Judge Brantley and their similar behaviors that Plaintiff believes evidence impropriety. (Exhibit F).

22.  On information and belief, Judge Brantley was aware of Plaintiff's campaign and public platform. Judge Carl Bowers is a close family friend and was the former law clerk for Judge Brantley.

### D. Post-Election Retaliation and July 2024 Phone-Seizure Incident.

23.  Prior to the May 2024 election, Judge Brantley permitted Plaintiff to record judicial proceedings, including in *Lowe v. Lowe*, Cobb County Superior Court, Case Nos. 23105442 and 20106072. (Exhibit G). Plaintiff requested to record hearings pursuant to USCR 22 **at the request of Laura Lowe, the mother-litigant in *Lowe v. Lowe*.**

24.  At a July 2024 hearing in *Lowe v. Lowe*—which was after the May 2024 election—Judge Brantley abruptly reversed his recording allowance and **denied** Plaintiff's next recording request in *Lowe v. Lowe* and signed an order

8

(**drafted by Attorney Leonard**, who was an attorney of record in *Lowe v. Lowe* and also the spouse of Cobb County Superior Court Judge Robert D. Leonard II) that stated Plaintiff's requests to record those hearings pursuant to USCR 22 were "harassing." (Exhibit H ¶ 1(i)). Katie Leonard then took Judge Brantley's rubber-stamped order (that she drafted) as justification to go on social media and personally attack Plaintiff. (Exhibit I). It should be noted that while she never states Plaintiff's name in the TikTok videos, Mrs. Leonard does flash a court document that displays Plaintiff's name to be sure that her viewers saw it. Mrs. Leonard removed the videos from TikTok some months after the complaint against her (among other state actors) was filed in Case No. 1:24-CV-3436-JPB. Plaintiff has since voluntarily dismissed that action against Mrs. Leonard without prejudice.

25.    At the June 2024 *Lowe v. Lowe* hearing regarding Plaintiff's request to record, when Attorney Leonard made argument that Plaintiff wished to rebut, Plaintiff asked Judge Brantley if Plaintiff may speak and Judge Brantley inquired: "About what?" (Exhibit J). As Plaintiff began to answer, Judge Brantley cut him off stating, "No. Have a seat sir. You've used enough of this proceedings' time." *Id.* Judge Brantley then proceeded to call the "Deputy" to induce Plaintiff to seat promptly. *Id.* Plaintiff did in fact seat himself promptly. *Id.*

26.    Also at the June 2024 hearing in *Lowe v. Lowe*, at the request of Attorney Leonard, Judge Brantley ordered court law enforcement to inspect

9

Plaintiff's phone to ensure he was not recording. (Exhibit J). Concerned he may never see his cell phone again, Plaintiff just opted to vacate the courtroom for the remainder of the "public" proceeding. *Id.*

27. After the June 2024 *Lowe v. Lowe* hearing, Katie Leonard and Brett Conway (assisting Judge Brantley) continued to email Plaintiff and enter court orders trying to induce Plaintiff to come to court for another *Lowe v. Lowe* hearing—thought Plaintiff was neither a party nor an attorney of record of that case—and make argument against paying Katie Leonard's attorney fees for Plaintiff requesting to record the June hearing. (Exhibit K). It was those continual attempts to induce Plaintiff to appear before Judge Brantley to argue against Leonard's fees that prompted Plaintiff to immediately initiate his action in this same Court, Case No. 1:24-CV-3436-JPB, against several Cobb County judges and staff, which included Cobb County Senior Judge Brantley and senior staff attorney Brett Conway.

28. Shortly after initiating the Case No. 1:24-CV-3436-JPB, Plaintiff moved to withdraw from representation of Derrick Jackson from the *Paramount Properties v. Jackson* case pending in Fulton County Superior Court in which Judge Brantley was presiding, a motion which Judge Brantley promptly **granted** also in August 2024. Thus, Judge Brantley cannot use this, or any federal lawsuit, as an excuse to argue that he was "providentially hindered" from granting my

withdrawal from a case. Plaintiff is no longer an attorney of record in the *Paramount Properties v. Jackson*, Fulton County Superior Court, Case No. 2022CV365529.

### E. Disqualification Orders and Administrative Re-Involvement.

29.    Due to transactions, events and occurrences and material facts to <u>Case No. 1:24-CV-3436</u>, of which Judge Brantley and Brett Conway were primary catalysts, pro se party Robert Murray filed a *Motion for Recusal of the Entire Bench of Cobb County Superior Court* into *Murray v. Hill* on June 25, 2024, which triggered a chain reaction of recusal orders were entered in *Murray v. Hill et al.*— though at the time Plaintiff was neither an attorney nor a party to that action. (<u>Exhibit L</u>). Between <u>August 3, 2024</u> and <u>October 1, 2025</u>, multiple Superior Court judges declared all Cobb County Superior Court judges disqualified from presiding over *Murray v. Hill* for various reasons. (<u>Exhibit L-M</u>).

30.    On September 12, 2025, Cobb County Chief Superior Court Judge Ann B. Harris, who voluntarily recused herself **twice** in the case and was declared in a disqualified class at least **three times** as a member of the class of Cobb County Superior Court judges, entered an order requiring the Cobb County Administrator, Christopher Hansard, to submit a request to the 7th District Administrator for a senior judge. (<u>Exhibit M</u>).

11

31. Concerned that the 7th District Administrative Judge would not be aware of the unprecedented amount of recusals of Cobb County judges on the *Murray v. Hill* record some which included disqualification of the entire Cobb County bench; on September 19, 2025, Plaintiff filed a motion to recuse the entire 7th Administrative District from the *Murray* case. While the 7th District Admin Judge denied Plaintiff's motion to recuse the entire 7th Administrative District on September 23, 2025, his order confirms the record reflected that all Cobb County judges were disqualified. (Exhibit N) ("[T]he undersigned judge finds and concludes that neither his recusal nor the recusal of the judges of the 7th Judicial Administrative District, **other than the active Cobb judges**, is warranted . . . And the record fails to reflect any impropriety or even the appearance of any impropriety by any judge of the 7th Judicial Administrative District, **other than the Cobb judges, all of whom voluntarily recused**.") (Emphasis added); *see also* (Exhibit L) (containing Chief Superior Court Judge Alan G. Poole's December 4, 2024 order of recusal ordering that: "As the motion to recuse the entire Superior Court of Cobb County bench remains pending, the undersigned as the Chief Judge of the Cobb Judicial Circuit hereby and pursuant to Judicial Cannon 2.11 issue a **VOLUNTARY AND IMMEDIATE RECUSAL of** all Cobb County Superior Court Judges and former Cobb County Superior Court Judges who now preside as senior judges of the State of Georgia. **IT IS HEREBY ORDERED** that **all such**

**judges are RECUSED from any further proceedings in this case**.")(Emphasis added); (Exhibit M) (containing Chief Superior Court Judge Ann B. Harris's voluntary recusal order ("Pursuant to Uniform Superior Court Rule 25.7 and Rule 2.11 of the Code of Judicial Conduct, the Court *sua* sponte, hereby voluntarily recuses from the above-styled matter."); Judge Jason Marbutt's order of voluntary recusal ("If ever there was a case where a full bench recusal seems appropriate, it would seem this is the case.")).

32. Despite his September 23, 2025 order confirming the evidence showed all Cobb Count Superior Court judges were (or should be) disqualified from *Murray v. Hill*, and regardless of the fact that Judge Brantley was the catalyst for the filing of Case No. 1:24-CV-3436 and the initial motion to recuse the entire Cobb County Superior Court bench, the 7th District Admin Judge entered an order on October 3, 2025, assigning Judge G. Grant Brantley to the *Murray v. Hill* case by an "agreement" with Judge Brantley. (Exhibits L-M); (Exhibit O) ("The Honorable G. Grant Brantley, Senior Judge, Superior Court, State of Georgia, has **agreed** to assist the court in said assignment.") (Emphasis added). In less than 24-hours, on October 4, 2025, Plaintiff filed his intent to withdraw from representation of Robert Murray, the named Plaintiff in *Murray v. Hill et al*.

### F.  Refusal to Rule Used to Manufacture Abstention.

33. On October 21, 2025, Plaintiff filed a Rule 4.3 Motion to Withdraw from representation of Robert Murray in *Murray v. Hill*.

34. Judge Brantley refused to rule on the motion while simultaneously scheduling a mandatory appearance hearing for all parties on November 12, 2025.

35. This intentional interference with Plaintiff's case and refusal to rule has the sole effect of keeping Plaintiff under Judge Brantley's authority so that Defendants may argue *Younger* abstention and/or to retaliate against Plaintiff with as Judge Grubbs did 2023. *See* (¶ 48 *infra*). The initial notice for the November 12, 2025, hearing constituted imminent harm—though Judge Brantley cancelled that hearing on November 10, 2025. Refusal to rule on an unopposed withdrawal motion for the sole purpose of retaining jurisdiction is an **administrative act**, not an adjudicative judicial act. As to Plaintiff, the only practical effect of not ruling on Plaintiff's motion to withdraw as counsel—a motion that has not been objected to by either Robert Murray (Plaintiff's client) or the opposing counsel—is to perpetuate jurisdiction over Plaintiff personally for retaliatory purposes; it serves no **legitimate** adjudicative purpose as to Plaintiff.

## V.    STANDING

36. Plaintiff has Article III standing under *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

37.    Plaintiff has standing to seek declaratory or, in the alternative, injunctive relief because Defendants' conduct arises from an ongoing administrative pattern and practice that continues to *chill* Plaintiff's rights and to place Plaintiff—and others similarly situated—at substantial risk of future constitutional injury.

38.    Although only certain Defendants have personally acted against Plaintiff to date, each named Defendant exercises continuing authority within the same integrated administrative structure that routinely permits or directs the challenged conduct.

39.    Defendants' collective course of conduct reflects a known pattern of retaliatory or discriminatory treatment toward attorneys and litigants who engage in protected activities similar to Plaintiff's, demonstrating a propensity to repeat such violations when future opportunities arise. *See Honig v. Doe*, 484 U.S. 305, 318 (1988) ("In the present case, we have jurisdiction if there is a reasonable likelihood that respondents will again suffer the deprivation of EHA-mandated rights that gave rise to this suit. We believe that, at least with respect to respondent Smith, such a possibility does in fact exist and that the case therefore remains justiciable."); *Armstrong v. Davis*, 275 F.3d 849, 864 (9th Cir. 2001) ("Class membership may also be relevant to show an immediate likelihood of future injury."). Judge Brantley, Christopher Hansard and Christopher Hansard's staff

15

(Audrey Hastings and Brett Conway) have established that they will create or otherwise manufacture their own opportunities to violate rights.

40.    Courts also hold that where a plaintiff remains a member of the class of persons directly regulated or affected by an ongoing policy, standing exists to seek prospective relief even if the next instance of enforcement has not yet occurred. *See Church v. City of Huntsville*, 30 F.3d 1332, 1338-39 (11th Cir. 1994) (standing for injunctive relief existed where the city's known pattern of harassing homeless persons posed a continuing threat to plaintiffs likely to encounter police again).

41.    Each Defendant named herein possesses ongoing discretionary authority over the same administrative mechanisms that gave rise to Plaintiff's past injury and to similar injuries suffered by others within Plaintiff's class. Given Defendants' shared history and continuing power establishing a propensity and pattern to exercise discretion in the same manner, Plaintiff faces a credible and imminent threat of renewed constitutional injury.

42.    Accordingly, Plaintiff's request for declaratory relief presents an actual, live controversy under Article III and is not speculative.

43. Plaintiff's ongoing practice before the Cobb County Superior Court ensures continuing exposure to Defendants' authority and imminent risk of recurrence.

**No Adequate State Remedy**

44. There is no order that Plaintiff can appeal to protect his rights through any state appellate process. Further, being forced to invoke an appellate process is in fact part of the harm caused by the constitutional violation, which in turn shows that Plaintiff was denied due process in the first instance.

45. Recusal processes are *de facto* non-functional, as disqualification of Cobb County judges, which include Judge Brantley, was already declared on the record (at least) three times in *Murray v. Hill. See* (¶¶ 29-32, *supra*).

46. Plaintiff, an attorney practicing primarily in Cobb County, has no adequate state remedy due to government immunity protections, futile recusal and appellate processes, and the lack of mechanisms to address bias by court staff. Plaintiff has filed multiple motions to recuse in state court, all meritorious yet all denied, confirming the inadequacy of state remedies. No cases exist from at least the last twenty-five (25) years where a Cobb County Superior Court judge was recused by another judge upon a Uniform Superior Court Rule 25.3 re-assignment, nor where the Georgia Court of Appeals reversed or vacated such a denial.

47. In prior appellate proceedings before the Georgia Court of Appeals and the Supreme Court of Georgia, Plaintiff expressly informed those tribunals— through a motion for reconsideration brief and petitions for certiorari briefs filed in matters arising from Fulton County Superior Court cases—that the appellate

courts' continued refusal to review or correct improper rulings resulting from retaliatory motives would be prima facie evidence of the inadequacy of state judicial remedies. Plaintiff stated that, if such refusals persisted, he would be compelled to seek prospective relief under 42 U.S.C. § 1983 in federal court. *See* (Exhibit P) ("This case is the result of blatant retaliation and establishes a prima facie case for prospective relief under 42 U.S.C. § 1983 by the United States district courts and the Eleventh Circuit. 42 U.S.C. § 1983 is 'not only an expression of the importance of protecting federal rights from infringement by the states but also, where necessary, the desire to place the national government between the state and its citizens.'")(citing *Younger v. Harris*, 401 U.S. 37, 63 (1971); (Exhibit Q) (Plaintiff conveys to the Georgia Supreme Court that the questions presented in his petition for writ of certiorari "come before this Court as symptoms of much bigger issues. More directly put, what happened in the trial court and was affirmed by the Georgia Court of Appeals in this case is the result of blatant retaliation which, **but for relief from this Court**, establishes a prima facie case for prospective relief under 42 U.S.C. § 1983 by the United States federal district courts from the rath of certain lower court judges.").

48.    Despite that notice, both the Georgia Supreme Court and Georgia Court of Appeals declined reconsideration and review without opinion, leaving intact orders entered by judges with retaliatory motives and thereby confirming the

systemic inability of the state judiciary to provide a neutral forum for Plaintiff and Plaintiff's clients. Plaintiff is not asking this Court to review those matters in any appellate capacity, but only to consider them as evidence of the inadequacy of state proceedings. Plaintiff has a Petition for Writ of Certiorari application pending with the U.S. Supreme Court (Exhibit R), regarding a $116,000 sanction by Cobb County Senior Judge Adele Grubbs which was imposed on Plaintiff months after Plaintiff had filed multiple recusal motions against Judge Grubbs in *Jackson v. McCracken et al.* in Fulton County Superior Court.

49. This sequence demonstrates that further state-court petitions would be futile, put Plaintiff at risk of retaliatory conduct including but not limited to bogus (functionally non-reviewable) sanctions, and that federal jurisdiction is proper to address ongoing constitutional violations. *See Gibson v. Berryhill*, 411 U.S. 564, 577-578 (1973) (Younger abstention inapplicable where the state process is structurally biased or incapable of neutral adjudication. "It is appropriate, therefore, that we consider the District Court's conclusions that the State Board of Optometry was so biased by prejudgment and pecuniary interest that it could not constitutionally conduct hearings looking toward the revocation of appellees' licenses to practice optometry. We affirm the District Court in this respect."); *Luckey v. Harris*, 860 F.2d 1012, 1017-1018 (11th Cir. 1988) (prospective relief available where systemic practices threaten continuing constitutional harm).

19

50. This Court can take judicial notice that there are no cases within at least the last 25 years where the Georgia Court of Appeals reversed or vacated the non-recusal of a trial judge after a recusal motion was re-assigned for a hearing pursuant to Rule 25.3 and then denied by another trial judge. Cobb County Superior Court judges are aware of this loophole for not having recusal denials reversed or vacated by the Georgia Court of Appeals.

51. Plaintiff's experience further confirms the futility of seeking protection through ordinary state-court channels. In every instance where Defendant Brantley has asserted jurisdiction despite clear bias against Plaintiff, Plaintiff's only means of mitigating the risk of constitutional injury against Plaintiff has been to file a Motion to Withdraw from representation, thereby removing himself from the case and abandoning his client's active representation—which is also an injury to Plaintiff's right to associate. Withdrawing from cases, while it has been effective to end immediate coercion, imposes a direct burden on Plaintiff's professional and expressive rights and cannot be considered an "adequate remedy" within the meaning of *Younger v. Harris*, 401 U.S. 37 (1971). Alternatively, with permission of his client, Plaintiff could voluntarily dismiss the state court cases and advise his client to find another attorney which, again, renders a *de facto* constitutional injury (e.g., violation of right to associate and right to work).

20

52.    The only other measure that has deterred repetition of the challenged conduct has been the filing of federal civil-rights actions under 42 U.S.C. § 1983 naming Defendant Brantley and related court administrators. Plaintiff should not have to do that—but Plaintiff does in fact have to do that.

53. The necessity of resorting to federal litigation itself demonstrates that the state system is structurally incapable of self-correction. These realities underscore that abstention is improper and that prospective relief is the only effective means of preventing further constitutional violations.

## Manufactured Abstention Tactic

54. **The state proceeding is the weapon, not the forum**. Defendant Brantley's sudden self-assignment to *Murray v. Hill* after prior disqualifications of all Cobb County judges constitutes a deliberate attempt to fabricate an "ongoing state proceeding" for use as an abstention shield in this and related § 1983 actions.

55. Because this proceeding with Judge Brantley presiding exists solely by the Defendants' creation, it cannot be a legitimate basis for abstention. Defendants cannot manufacture a parallel state jurisdiction to defeat federal jurisdiction. *See Wilson v. Thompson*, 593 F.2d 1375, 1383 (5th Cir. 1979) (former 5th Cir. Pre-1981; binding in 11th Cir.) ("When a significant chilling effect on free speech is created by a bad faith prosecution, the prosecution will thus as a matter of law cause irreparable injury regardless of its outcome, and the federal courts cannot

21

abstain from issuing an injunction.") (quoting *Sheridan v. Garrison*, 415 F.2d 699, 706 (5th Cir. 1969)).

56. Abstention doctrines do not apply because Defendants are acting in bad faith and with retaliatory motive to prevent Plaintiff from obtaining federal protection of his constitutional rights. *Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975) (defines "bad faith" as no reasonable expectation of conviction). Judge Brantley has no reasonable expectation of finding a legitimate reason to cause Plaintiff to be at the November 12, 2025, hearing, but for retaliation against Plaintiff and manufactured abstentions.

57. Defendant Brantley's intentional interference with Case No. 23104461—despite orders declaring he is in a disqualified class—serves no legitimate judicial purpose and is intended to manufacture a pretextual "ongoing proceeding" to obstruct federal jurisdiction. *See Wilson v. Thompson*, 593 F.2d 1375, 1383 ("With respect to the interests of the State, it by definition does not have any legitimate interest in pursuing a bad faith prosecution brought to retaliate for or to deter the exercise of constitutionally protected rights.").

58. Plaintiff has no adequate remedy within the state system to protect his own constitutional rights as counsel. The relief sought is necessary to prevent retaliation and to restore Plaintiff's *chilled* rights.

22

## VI.   LEGAL STANDARDS

59. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) the deprivation of a right secured by the Constitution and (2) that the deprivation was committed by a person acting under color of state law. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

60. Declaratory relief is authorized by 28 U.S.C. § 2201, and injunctive relief is appropriate where ongoing constitutional violations cause irreparable harm. *Elrod v. Burns*, 427 U.S. 347 (1976).

61. Under *Ex parte Young* and Eleventh Circuit precedents such as *Luckey v. Harris*, 860 F.2d 1012 (11th Cir. 1988), prospective official-capacity claims for injunctive or declaratory relief are not barred by sovereign immunity. *See also Forrester v. White*, 484 U.S. 219 (1988) (administrative acts are not barred by judicial immunity). Claims are prospective and do not seek review of any state judgment, avoiding Rooker-Feldman.

62. The Fourteenth Amendment guarantees a fair and impartial tribunal. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 129 S.Ct. 2252 (2009).  Recusal of a judge is required when based on the facts and circumstances, "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Caperton* at 129 S.Ct. at 2257 (quoting *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712).

23

63. The First Amendment protects the right to petition the government without retaliation. *See, e.g., Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005); *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019).

64. Relief sought is forward-looking only and will operate solely through state-court procedures without federal oversight of any state proceeding. *O'Shea v. Littleton*, 414 U.S. 488 (1974), therefore does not bar federal jurisdiction.

65. The relief sought is a self-executing declaration, requiring no federal monitoring of any state judicial function; therefore *O'Shea* does not bar jurisdiction.

## VII.  CLAIMS FOR RELIEF

### COUNT I:  Violation of Fourteenth Amendment

66. Plaintiff realleges ¶¶ 1–65.

67. The Due Process Clause prohibits adjudication by judges with personal animus or a probability of bias toward a litigant or attorney. Recusal of a judge is required when based on the facts and circumstances, "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Caperton* at 129 S.Ct. at 2257.

## Extreme Facts

68. Defendants' continued future adjudication and control of cases involving Plaintiff poses a substantial and constitutionally intolerable risk of bias. *See Caperton* at 129 S.Ct. at 2257.

69. Defendants' have a custom and policy promoting non-random reassignment upon disqualification of Cobb County judges.

70. Defendant Brantley has shown a history of hostility toward Plaintiff, as evidenced by Judge Brantley's open court comments toward Plaintiff in *Paramount Properties v. Jackson*, Judge Brantley's post-election phone seizure threat and refusal to allow Plaintiff to record in *Lowe v. Lowe*, and his multiple attempts to assert jurisdiction over Plaintiff in both *Lowe* and *Jackson* and the recent instance in *Murray v. Hill*. (¶¶ 2, 5, 16-19, 23-28, 35, 39, 51, 55, 57), *supra*.

71. In *Jackson*, the Court of Appeals had jurisdiction over all pending matters yet Judge Brantley continued to try and order Plaintiff to appear. In *Lowe*, Plaintiff was not even a party nor an attorney of record in the case yet Conway continued to attempt to induce Plaintiff to appear before Brantley. In the latest *Murray v. Hill* case where Plaintiff was an attorney of record, all Cobb County judges were recused and declared multiple times to be disqualified, yet Judge Brantley entered the case by agreement made with the assigning judge.

72. Multiple written orders entered by Cobb County Superior Court judges in *Murray v. Hill* expressly disqualified the entire Cobb County Superior Court bench from adjudicating matters in that case due to concerns regarding the appearance of judicial impropriety. (Exhibits L-O); (¶¶ 29-32), *supra*.

73. Despite those disqualification orders, Judge Brantley continues to assert personal jurisdiction over Plaintiff through a refusal to adjudicate Plaintiff's Motion to Withdraw in *Murray v. Hill*—a case to which Judge Brantley was not assigned but, rather, **entered into by his own volition** after an array of Cobb County **recusals that Judge Brantley caused in the first place**. Because Judge Brantley merely refuses to order Plaintiff's withdrawal from that case, an appeal in the state proceeding is not available to Plaintiff.

74. Compelling Plaintiff to appear before a judicial officer in a case in which that judicial officer was already found to be disqualified creates an objectively intolerable risk of bias, which violates Plaintiff's Fourteenth Amendment right to a fair tribunal.

75. If Plaintiff is forced to appear at any hearing in the *Murray v. Hill*, the constitutional injury will be complete and irreparable at that moment, because the purpose of Plaintiff's compelled appearance is to subject Plaintiff once again to the coercive authority of an adjudicator previously adjudged disqualified.

76. Plaintiff has no adequate state remedy to prevent this harm, because he is not a party to the underlying state case and there is no order to appeal—merely a refusal to rule. Plaintiff therefore cannot appeal the constitutional violation as to himself. Only this Court can prevent the violation before it occurs.

77.    Defendant Brantley's history of refusing recusal in cases raising concerns of bias extends well beyond Cobb County. Court records reflect that recusal motions have been filed against him in multiple Georgia counties, including Paulding, Spalding, Douglas, Fulton, and Forsyth, arising from allegations of partiality, improper tone, or personal animus in his conduct on the bench. In each instance, Defendant Brantley refused to recuse, and the Georgia Court of Appeals affirmed or declined to disturb those refusals. *See Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 881 (2009) (risk of bias exists where the system fails to provide a neutral forum); *In re Murchison*, 349 U.S. 133, 136 (1955) ("No man can be a judge in his own case.").

78.    This history further supports Plaintiff's allegation that no adequate state remedy exists to protect his Fourteenth Amendment right to a fair and impartial tribunal. When every prior recusal motion involving Defendant Brantley has failed, despite recurring allegations of bias, the appellate process itself becomes part of the harm. The futility of obtaining state-court relief thus heightens the necessity for federal declaratory protection. *See Luckey v. Harris*, 860 F.2d

1012, 1018 (11th Cir. 1988) (prospective relief appropriate where systemic practices threaten ongoing constitutional violations).

79. A prospective declaration is necessary to prevent future violations of Plaintiff's Fourteenth Amendment rights.

**COUNT II:        First Amendment Retaliation**

80. Plaintiff realleges ¶¶ 1–79.

81. Plaintiff's protected criticism of judicial practices precipitated retaliatory conduct by Defendants, including public remarks, atypical rulings, and personal hostility.

82. Defendants have retaliated against Plaintiff, Plaintiff's associates, Plaintiff's friends, and Plaintiff's clients for his protected speech (campaign website, media comments, judicial candidacy) and federal litigation by reversing recording permissions, threatening phone seizure, and assigning Defendant Brantley to Plaintiff's case in defiance of disqualification orders.

83. One week after the initiation of Case No. 1:25-CV-4077 against Calendar Coordinator Karli Smith, the Attorney General's office (who represented Judge Brantley and presently represents Judge Alan G. Poole in Case No. 1:24-CV-3436) indicted Cobb County Superior Court Clerk, Connie Taylor, before a senior judge for violation of her oath of office and destruction of public records—issues before this Court against Judge Poole and his staff, Karli Smith, in cases 1:25-CV-

4077 and 1:24-CV-3436. At that hearing, the court allowed without scrutiny Noble Hunter Riggall of the Marietta Daily Journal, Taylor Groft of the Atlanta Journal Constitution and Lacey Lee of WSB-TV all to record the indictment hearing under Uniform Superior Court Rule 22. However, when Mary Murray, Robert Murray's mother, of Equally Present, LLC requested to record the scheduled November 12, 2025 hearing in *Murray v. Hill*, Mr. Conway (by email and with no apparent authority) demanded that Mrs. Murray "provide some authority that permits a board member to represent the interests of an LLC in a legal proceeding, or that the request submitted is not included in the general prohibition against pro se representation of a business entity." (Exhibit S). Mr. Conway did not put these same requirements on (non-attorneys) Noble Hunter Riggall, Taylor Groft, Lacey Lee, or any other individual who has requested to record Superior Court hearings in history—and if he did it was certainly selective and discriminatory as with Mrs. Murray here. *See* (Exhibit S).

83. Future participation by Defendants in Plaintiff's matters threatens continued retaliation and amplifies the *chilling* of Plaintiff's expressive and petitioning rights.

84. A prospective declaration is necessary to ensure Plaintiff can continue to engage in protected advocacy without fear of state retaliation.

**COUNT III:        Bad-Faith Manufacture of Abstention Posture**

85.    Plaintiff repeats and realleges ¶¶ 1–84.

86.    In 2024, Defendant Brantley and Brett Conway engaged in retaliatory conduct in matters involving Plaintiff and those associated with him. Plaintiff initiated a federal civil-rights action seeking prospective protection from further misconduct. When the challenged behavior ceased, Plaintiff voluntarily dismissed his claims in Case No. 1:24-CV-3436-JPB against Judge Brantley and Conway in good faith **believing Defendants no longer had the ability or opportunity to target Plaintiff.** Plaintiff was apparently wrong and continuing retaliatory conduct has occurred after December 2024. *See e.g.* (Exhibit S).

87.    Defendant Hansard, acting through informal and undisclosed administrative arrangements, caused a matter in which Plaintiff serves as counsel to be reassigned to Defendant Brantley on October 3, 2025, despite all Defendants knowing that Judge Brantley was disqualified from presiding over matters involving Plaintiff. This was just two weeks after Plaintiff sent Hansard an Open Records Request for documents and records that "were created between June 1, 2025, and September 19, 2025 . . . related to communications and procedures in connection with the selection and/or request for a senior judge to preside over any matter in the Cobb County Superior Court, including but not limited to such communications between you, your staff and your Office of the Superior Court

Administration and any judge and any staff member of the Administrative Judge of the 7th Judicial District." To which Hansard replied "As part of the judicial branch of the state government of Georgia, the Superior Court of Cobb County is not subject to the Georgia Open Records Act (*see Fathers Are Parents Too v. Hunstein*, 415 S.E.2d. 322,323 (Ga. Ct. App. 1992); Op. Ga. Att'y Gen. U95-22; Op. Ga. Att'y Gen. 79-25).Therefore, I cannot provide the information requested." (Exhibit T).

88.    Defendants' sudden re-involvement in Plaintiff's practice was not compelled by random assignment, judicial necessity, or legitimate case management. Rather, it appears that Judge Brantley's assumption of authority followed a new "agreement" between judges to transfer jurisdiction to him because Plaintiff was involved as counsel. On October 6, 2025, Plaintiff sent a letter to both Judge Brantley's and Brett Conway's attorneys regarding facts and circumstances indicative of retaliatory motives. (Exhibit U). All facts stated in that letter are true.

89.    Judge Brantley's refusal to rule on withdrawal is not judicial discretion and is a materially and selectively different manner in which Judge Brantley acted on Plaintiff's motion to withdraw in Fulton County Superior Court case— evidencing even more that it is administrative bad faith to maintain a sham proceeding. This is his third attempt to use a state process to retaliate for Plaintiff's right to petition and to speech.

90. This maneuver was executed while Defendants were fully aware that Plaintiff could not obtain any state appellate relief to protect his own constitutional rights as a litigant-attorney. Defendants then set a hearing for November 12, 2025, enabling them to assert the existence of an "ongoing proceeding" and thereby advance abstention defenses in this Court.

91.    Defendants are engaging in administrative self-assignment and jurisdictional manipulation for the express purpose of shielding their retaliatory conduct from federal review and thwarting Plaintiff's access to constitutional remedies.

92.    While no substantive judicial orders have yet been issued by Judge Brantley in the *Murray* state court case, the improper reacquisition of authority over Plaintiff and his client has already forced Plaintiff to appear and participate before a judicial officer previously adjudicated disqualified, *chilling* his protected advocacy and imposing an unconstitutional condition upon his continued practice.

93.    Federal abstention doctrines do not allow state officials to manufacture an "ongoing proceeding" to block § 1983 review or to create a pretextual *Younger* defense. The First and Fourteenth Amendments prohibit such manipulative conduct.

94.    Plaintiff therefore seeks a declaration that Defendants' conduct in reacquiring jurisdiction over Plaintiff for retaliatory and abstention-gaming

32

purposes violates the United States Constitution and that federal abstention is improper where the "ongoing proceeding" itself is the unconstitutional act.

**<u>COUNT IV:</u>**      **Interference with Access to Federal Remedies**

95.    Plaintiff realleges ¶¶ 1–94.

96.    Plaintiff has a constitutionally protected right under the First and Fourteenth Amendments to access federal courts to vindicate federally secured rights.

97.    Defendants Judge Brantley and Hansard, acting in concert with other judicial officials, administered and arranged a renewed assumption of jurisdiction over Plaintiff in a state-court matter for the express purpose of enabling Defendants to invoke abstention doctrines and block Plaintiff from obtaining federal review.

98.    This conduct was not compelled by legitimate judicial need or random assignment processes, but by Defendants' bad-faith motive to retaliate against Plaintiff and coerce Plaintiff back under the authority of Judge Brantley, a judge previously adjudicated disqualified.

99.    Defendants have used the existence of this manufactured proceeding as a procedural shield—engineering an argument that Plaintiff cannot obtain federal protection so long as Defendant Brantley continues to schedule hearings and assert jurisdiction over Plaintiff.

100.    Such conduct violates the Constitution by denying Plaintiff meaningful and timely access to a federal remedy, and by conditioning that access on Plaintiff's continued subjugation to retaliatory jurisdiction.

101. On October 21, 2025, Plaintiff filed a Rule 4.3 Motion to Withdraw. Defendant Brantley has refused to rule and set a hearing for November 12, 2025. On November 10, 2025, Defendants canceled the November 12, 2025 hearing knowing that granting withdrawal would eliminate the manufactured *Younger* bar between Plaintiff and Defendants. This is not a judicial act, but administrative bad faith.

102.    Plaintiff therefore seeks a declaration that Defendants' manufacture and exploitation of a state-court proceeding to constrain federal review violates the First and Fourteenth Amendments.

103. Plaintiff's only way to avoid and/or mitigate continual harm from Judge Brantly is with a remedy from this Court and this Court only.

## VIII. **PRAYERS FOR RELIEF**

Plaintiff reiterates that he is not requesting this Court to review, reverse, or invalidate any state court judgment or order. The relief sought herein is limited to prospective **declaratory** determinations regarding the constitutional validity of Judge Brantley's refusal to rule on Plaintiff's Motion to Withdraw. Plaintiff seeks

only the following declaratory determinations; no damages or injunctive supervision are requested.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and grant the following declaratory relief:

a. DECLARE that Defendant Senior Judge Brantley may not maintain or assert personal jurisdiction over Plaintiff in any proceeding where his jurisdiction over Plaintiff exists solely by virtue of a refusal to adjudicate Plaintiff's pending Motion to Withdraw in *Murray v. Hill*, Cobb County Superior Court, Case No. 23104461.

b. DECLARE that where a judicial officer's refusal to rule has the purpose or effect of preserving jurisdiction over Plaintiff personally, despite prior disqualification orders, such conduct violates Plaintiff's Fourteenth Amendment right to a tribunal free from actual bias or constitutionally intolerable probability of bias.

c. DECLARE that continued subjection of Plaintiff, as an attorney, to mandatory appearances before a judicial officer previously adjudged disqualified in matters relating to Plaintiff constitutes retaliation and a present, ongoing violation of Plaintiff's First Amendment rights.

d.  DECLARE that *Younger* abstention does not apply where a state proceeding is created or perpetuated through refusal to adjudicate for the purpose of obstructing Plaintiff's access to federal courts.

e.  DECLARE that Defendants' use of administrative-judicial authority to compel Plaintiff's personal participation before a disqualified judicial officer, without legitimate adjudicative purpose, violates Plaintiff's right of access to the federal courts.

f.  DECLARE that, absent an order granting Plaintiff's Motion to Withdraw, Plaintiff is constitutionally excused from any appearance at the hearing in *Murray v. Hill*;

g.  DECLARE that compelling Plaintiff's appearance to any hearing in *Murray v. Hill* would violate the First and Fourteenth Amendments.

h.  AWARD Plaintiff his costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

i.  Grant such other and further declaratory relief as the Court deems just and proper.

This submission was prepared using Times New Roman 14-point font in compliance with L. Rule 5.1(C).

36

Submitted this 24th day of November, 2025.

Respectfully submitted,

/s/ _____

Matthew D. McMaster

SERVICE ADDRESS

Plaintiff, *Pro se*

12 Powder Springs St.

GA Bar No. 218044

Suite 230

Marietta, GA 30064

(770) 362-6490 (cell)

(800) 890-3981 (office)

mdmcmaster@mcmasterlegal.com

37