# Exhibit E

Online WikiLaw.org Article Criticizing How Senior Judge Adele Grubbs and Judge Brantley Are Financially Incentivized to Act as "henchman of the establishment"

# Fulton Judiciary Weaponizes Project ORCA



## Contents

**Cobb Judges Abandon Constitution to Protect the Establishment**
    Project ORCA
        Fulton Leaders 'Brainstormed'
        The Case Race
    Recusal Cover Fire
        The Courthouse Shell Game
    Cobb Leaders Rest On Their Laurels
        The Honorable Adele P. Grubbs
        The Honorable G. Grant Brantley
        Follow the Money
            Full-Time (Annual Salary) Elected Judges
            Part-Time (Daily Pay Rate) Senior Judges
            The Big Picture
**Short-Sighted Swan Song**
    See also
**References**

## Cobb Judges Abandon Constitution to Protect the Establishment

Fulton County's Project ORCA recently recruited two Cobb County Senior Judges, the Honorable G. Grant Brantley and the Honorable Adele P. Grubbs, allegedly to assist in managing the Fulton County Superior Court backlog of cases. The timing of the recruitment and their resulting rulings leave little to conjecture—Cobb Senior Judges are being used as mere cover fire for the improprieties of Fulton judges.

This article comes as an unanticipated 5th Part in a series of articles following an array of retaliatory actions of the Fulton County judiciary and law enforcement against a man not backing down to the system, *Power vs. Truth*. Derrick Jackson, a resident of Fulton County was robbed of his due process rights under the Constitution just days before Christmas of 2022 by Fulton County Superior Court Judge Melynee Leftridge (https://thewikilaw.org/wiki/index.php?title=Karma_prevails_and_Recusal_Motion_ens ues).[1] "After Jackson took to the media about the situation, his family was thrown out of their home located in The Country Club of the South by the Fulton County Sheriff's SCORPION Unit (https://thewikilaw.org/wiki/index.php?title=Fulton_Sheriff_wrongfu lly_evicts_Mother_and_children#The_SCORPION_Unit) without a proper court order."[2][3][4][5]

## Project ORCA

"On June 30, 2021, during a Fulton County Board of Commissioners meeting with the county's mayors at the height of the COVID-19 pandemic, County Manager Dick Anderson said Fulton's court case backlog had gotten out of control."[6]

### Fulton Leaders 'Brainstormed'

Just over five months later, when Fulton's courts finally reopened, county leaders embarked on a plan to address the backlog—which, after being inventoried, totaled 148,209 open and active cases. Fulton, the state's largest and most populous county with Georgia's largest court case backlog, chose a name just as big for the strategy: Project Orca.[7]

The funds allocated were just as large: the county used $75 million of the $200 million in federal American Rescue Plan Act monies it received in 2021 for pandemic-related programs to eliminate the case backlog. They must be spent by Dec. 31, 2024.[8]

According to an article written by Everett Catts of the Daily Report[9]:



> For Fulton, 'orca' has been synonymous with 'solution.' As of July 31, about a year and a half after launching Project Orca, the county had disposed of 108,661 cases, becoming a model for justice systems across the state and nation. In July, Fulton won one of the National Association of Counties' Achievement Awards (https://www.naco.org/resources/award-programs/project-orca-covid-19-case-resolution) for its innovative methods of whittling down the backlog. In May it won an Association County Commissioners of Georgia County of Excellence Award (https://www.georgiatrend.com/2023/05/25/innovate-connect-improve/) for the same reason.[10]

### The Case Race

So, how exactly does this Project ORCA *devour* cases at such a rapid pace? What is the secret? Cobb County attorney, Matthew D. McMaster (https://mcmasterlegal.com/), shared his opinion: "The court's due diligence is our due process. And due diligence takes time. If time is being reduced, so is due diligence and, in turn, due process. It's as simple as that." When asked if there's evidence proving that due process rights were being sacrificed at the hand of Project ORCA, McMaster responded: "Absolutely. The numbers don't lie."

To his point, looking at the numbers, disposing of over 100,000 cases in a year and a half leaves little time for due process. Project ORCA keeps a public scorecard of the number of cases closed by judge.[11] While best intentions may be behind keeping score in this manner, the end result is that judges are incentivized to cut corners,[12] sacrificing due process, simply to keep their case numbers down. Contributing to the atrocity, Fulton was nationally recognized "for its innovative methods of whittling down the backlog." It is clear here that, as with communism, misplaced incentives result in misbehavior—namely, abuse of power and deprivation of rights.

## Recusal Cover Fire

On April 2, 2023, Navigating Justice published an article entitled *Georgia Ethics Code Does Not Apply To Fulton Judges* (https://thewikilaw.org/wiki/index.php?title=Georgia_Ethics_Code_Does_Not_Apply_To_Fulton_Judges) discussing the Fulton County judiciary's refusal to recuse Judge Melynee Leftridge from presiding over multiple cases where Judge Leftridge showed clear bias, conflicts of interest, and plain incompetence. Here is a brief exert from that article:

### The Courthouse Shell Game



There are two ways a judge can be recused (or "removed") from a case: (1) voluntarily and (2) involuntarily. The latter, at least in Fulton County, occurs amongst flying pigs and unicorns. Jackson's case has extracted that fact pretty clearly. On March 23, 2023, Derrick Jackson filed a Petition for Writ of Mandamus and Writ of Prohibition demanding, among other things, the recusal of the entire Fulton County Superior Court bench after two of the judges (including Judge Leftridge) failed to recuse themselves from the eviction case despite conflicts, two judges (one in the eviction case and one in the Quiet Title case) refused to recuse Judge Leftridge, and three judges (including Judge Leftridge) all refused to appoint a special master, whose appointment is mandated by Georgia law in the Quiet Title case.[13]

While Judge Melynee Leftridge has refused to recuse herself from the Jackson cases, she has since failed to appear at any hearings or rule on any motions in connection to those cases. Rather, Judge Leftridge *appears* to be hiding behind Project ORCA in avoidance of her duties. To that end, Cobb County Senior Judges Adele Grubbs and Grant Brantley were recruited by Project ORCA to execute Judge Leftridge's duties. Unlike Leftridge, these Senior Judges are appointed to their roles and are not subject to election or reelection by voters. As of the date of this article, Judge Leftridge still remains the assigned judge according to the Fulton County Clerk's Office.

## Cobb Leaders Rest On Their Laurels

So why would Cobb County senior judges be complicit with Fulton County's agenda?[14][15] Some surface level research reveals that the start and end of the analysis lies with their personal incentives: Time[16] & Money.

## The Honorable Adele P. Grubbs

The Honorable Adele P. Grubbs (born in December of 1944) earned her law degree from Manchester University in England before she moved to the U.S., State of Georgia in 1969.[17] Grubbs was the first woman assistant district attorney in Cobb County and was elected to the county's Superior Court in 2000.[18] She retired after the end of her 2016 term and was appointed as a Senior Judge in 2017.

## The Honorable G. Grant Brantley

The Honorable G. Grant Brantley was born in Georgia and grew up in Griffin. Brantley graduated from Emory Law School in 1964 before joining the Air Force as a judge advocate. He moved to Cobb County after his military stint and served in a variety of government positions including Cobb County Superior Court judge from 1980 to 1992. "He didn't seek reelection in 1992 because he was in the process of being nominated to the U.S. District Court by President George H. W. Bush. But the '92 election spoiled his call-up to the federal bench."[19][20] Judge Brantley was appointed as a Senior Judge in 2007.

## Follow the Money



It is clear from above that both Judge Grubbs and Judge Brantley had very prominent legal careers and were highly regarded assets to the Cobb County justice system. However, at some point in their golden years, in their retirement tenures as Senior Judges, they appear to have wavered and fallen from foundations built on principles only to compromise their respective legacies. But for what? The most obvious answer reigns supreme: Money. Understanding how judges are paid sheds more light on the matter than is palatable.

### Full-Time (Annual Salary) Elected Judges

Full-time Superior Court judgeships in the State of Georgia are **salaried** positions that are paid with State tax dollars and often times subsidized by the county in which they preside. In Cobb County for example, Superior Court judges have salaries paid for by both State and County taxpayers totaling around $200,000 annually.[21] For their pay, these "elected" officials work full-time presiding over matters within their respective jurisdictions. Elected judges serve four year terms and must be re-elected by a majority of the voters within their county if they wish to remain on the bench. Thus, their job depends on the voters and, in turn, campaign donations. The end result: *Full-Time elected Superior Court judges cater to their campaign donors*. In other words, campaign donors and political supporters get preferential treatment and favorable results in cases regardless of the actual facts. The following chart illustrates how campaign donations influence a full-time judge's decisions:



As shown above, [1] campaign donors contribute money to an elected judge's campaign, [2] campaign donors then gain influence over the elected judge's decisions and, in turn, the judge caters to the desires of his or her donors. [3] The elected judge uses his or her campaign funds to influence the voters increasing the likelihood of keeping his or her job in an election. [4] Taxpayer money

funds the salary of the elected judge, though the taxpayers do not have influence over a judge's decisions because taxes are mandated by the government and the tax paid salary is not the result of a judge's performance on the bench.

### Part-Time (Daily Pay Rate) Senior Judges

Part-time **Senior Judges** in the State of Georgia are paid by the State a **daily** rate "in the amount of the annual state salary of a judge of the applicable court, divided by 235."[22] So, based on the $200,000 estimated Cobb County annual salary for elected judges, a Senior Judge presiding in Cobb County makes about $850 per day. These Senior Judges obtain their respective working days by having cases assigned to them by full-time judges. **Mediator** assignments are also court appointed roles that Senior Judges receive from full-time judges. And, when a Senior Judge serves as a mediator, he or she makes their money at a premium hourly rate, usually between $150 and $350 per hour. In short, a Senior Judge's job heavily depends on the will of the full-time judges. The end result: *Part-time Senior Judges cater to the desires of the assigning full-time elected judges*. Thus, if a full-time judge wants a specific outcome in a case, the part-time Senior Judge will make it so—simply to increase his or her opportunity for future appointments by that particular full-time judge.

### The Big Picture

In an article published in 2022, Cobb County State Court Judge, Carl Bowers, said that when Bowers went into private practice, "Brantley told him to remember he was not just practicing law, but running a business."[23] Interestingly, while a judge is a government position for the purpose of serving the public, Judge Brantley treats his judgeship exactly as a business, and nothing more.[24] The below chart illustrates how the "business" of a Superior Court judge is conducted:



**Elected Judge**

[1] Campaign donors contribute money to an elected judge's campaign.

[2] Campaign donors, by virtue of their donations, gain influence over the elected judge's decisions and, in turn, the judge caters to the desires of his or her donors.

[3] The elected judge then uses his or her campaign funds to influence the voters and the judge is therefore able to increase the likelihood of keeping his or her job in an election.

[4] Taxpayer money funds the salary of the elected judge, though the taxpayers do not have influence over a judge's decisions because taxes are mandated by the government and the tax paid salary is not the result of a judge's performance on the bench.

### Senior Judge
[5] The elected judge assigns a case to a senior judge.

[6] The senior judge is compensated with tax dollars at a **daily** rate "in the amount of the annual state salary of a judge of the applicable court, divided by 235."[25] Though, the taxpayers do not have influence over a senior judge's decisions because taxes are mandated by the government and the tax paid salary is not the result of a judge's performance on the bench.

[7] The elected judge uses this case assignment power to influence the senior judge and the senior judge, in turn, caters to the desires of the elected judge in order to increase the likelihood of being assigned to cases in the future.[26]

### Mediator
[8] The elected judge assigns a case to a mediator (who is often times also a campaign donor and/or a senior judge).

[9] The parties in the case are ordered to mediation for the purpose of trying to settle the case.

[10] The parties are ordered to pay the mediator at an hourly rate usually between $150 and $350 per hour.

[11] The elected judge uses this mediator assignment power to influence the senior judge and the senior judge, in turn, caters to the desires of the elected judge in order to increase the likelihood of being assigned as a mediator in the future.

- *See also* Cobb County - Judicial Misconduct: A Participant in Cobb's Notorious 'Pay-to-Play' Way (https://thewikilaw.org/wiki/index. php?title=Cobb_County_-_Judicial_Misconduct#A_Participant_in_Cobb.27s_Notorious_.22Pay-to-Play.22_Way)

# Short-Sighted Swan Song

It *appears* that heavily distinguished and once well respected Cobb County judges have in retirement abandoned their principles and are enabling injustice at the expense of their good names. And what exactly changed (if anything) that transformed these once highly regarded judicial leaders into mere henchmen of the establishment?

The most obvious answer prevails: **How these judges make their money.**

By

*Deborah Beacham*
NAVIGATING JUSTICE

If you are aware of similar problems in Georgia legal matters, send the details and documents here: https://navigatingjustice.org/reporting/

November 7, 2023

## See also

- Part 1: Karma prevails and Recusal Motion ensues
- Part 2: Fulton Sheriff wrongfully evicts Mother and children
- Part 3: Georgia Ethics Code Does Not Apply To Fulton Judges
- Part 4: Cobb County judge sets the record straight in Fulton, or is it all a facade?

# References

1. The plaintiff requested from the court a release of all funds held in the Registry at around 5:20 PM on December 20, 2022; and Judge Melynee Leftridge entered an order releasing the funds without a hearing at 11:03 AM the very next morning (on December 21) with over $40,000 of those funds still in dispute for a jury to decide ownership of. Karma prevails and Recusal Motion ensues (ht tps://thewikilaw.org/wiki/index.php?title=Karma_prevails_and_Recusal_Motion_ensues). Despite Judge Leftridge's order being

entered without a hearing or any supporting evidence, Judge Grant Brantley upheld Judge Leftridge's unconstitutional order and erroneously ruled that "Defendant was provided adequate due process". Order, *Paramount Properties Management Group LLC v. Derrick Jackson,* Fulton County Superior Court, Case No. 2022CV365529 (https://thewikilaw.org/wiki/images/9/9f/Order_Denying_Motion_to_Vacate.pdf)

2. Karma prevails and Recusal Motion ensues (https://thewikilaw.org/wiki/index.php?title=Karma_prevails_and_Recusal_Motion_ensues)

3. Fulton Sheriff wrongfully evicts Mother and children (https://thewikilaw.org/wiki/index.php?title=Fulton_Sheriff_wrongfully_evicts_Mother_and_children)

4. Georgia Ethics Code Does Not Apply To Fulton Judges

5. Cobb County judge sets the record straight in Fulton, or is it all a facade?

6. *How Fulton County's Project Orca Devoured 108,661 Court Cases and Counting,* by Everett Catts (August 28, 2023) (https://www.law.com/dailyreportonline/2023/08/28/how-fulton-countys-project-orca-devoured-108661-court-cases-and-counting/).

7. *How Fulton County's Project Orca Devoured 108,661 Court Cases and Counting,* by Everett Catts (August 28, 2023) (https://www.law.com/dailyreportonline/2023/08/28/how-fulton-countys-project-orca-devoured-108661-court-cases-and-counting/).

8. *How Fulton County's Project Orca Devoured 108,661 Court Cases and Counting,* by Everett Catts (August 28, 2023) (https://www.law.com/dailyreportonline/2023/08/28/how-fulton-countys-project-orca-devoured-108661-court-cases-and-counting/).

9. *How Fulton County's Project Orca Devoured 108,661 Court Cases and Counting,* by Everett Catts (August 28, 2023) (https://thewikilaw.org/wiki/images/2/29/Fulton_Countys_Project_Orca_Devours_108%2C661_Court_Cases_and_Counting_Daily_Report.pdf)

10. *How Fulton County's Project Orca Devoured 108,661 Court Cases and Counting,* by Everett Catts (August 28, 2023) (https://www.law.com/dailyreportonline/2023/08/28/how-fulton-countys-project-orca-devoured-108661-court-cases-and-counting/?slreturn=20230908091818)

11. Project ORCA: Open and Closed Cases by JudgeName (https://sharefulton.fultoncountyga.gov/dataset/Project-ORCA-Open-and-Closed-Cases-by-JudgeName/6th6-2xwr)

12. *See example* Karma prevails and Recusal Motion ensues (https://thewikilaw.org/wiki/index.php?title=Karma_prevails_and_Recusal_Motion_ensues). *See also* Fulton Sheriff wrongfully evicts Mother and Children (https://thewikilaw.org/wiki/index.php/Fulton_Sheriff_wrongfully_evicts_Mother_and_children)

13. *Georgia Ethics Code Does Not Apply To Fulton Judges* (https://thewikilaw.org/wiki/index.php?title=Georgia_Ethics_Code_Does_Not_Apply_To_Fulton_Judges)

14. Judge Adele Grubbs appointed Berry Zimmerman as a special master to the case even though Mr. Zimmerman was disqualified to serve in that capacity under the Judicial Code of Ethics. Zimmerman subsequently withdrew as special master from the case after Derrick Jackson's attorney motioned for Zimmerman's removal. Cobb County judge sets the record straight in Fulton, or is all a facade? (https://thewikilaw.org/wiki/index.php?title=Cobb_County_judge_sets_the_record_straight_in_Fulton,_or_is_it_all_a_facade%3F)

15. On December 21, 2022, Judge Melynee Leftridge entered an order stating that Derrick Jackson was required to pay $30,000 into the Registry of the Fulton County court by December 31, 2022 even though Jackson had already deposited $190,264.52 into the Registry prior to that date. Karma prevails and Recusal Motion ensues (https://thewikilaw.org/wiki/index.php?title=Karma_prevails_and_Recusal_Motion_ensues). Though, only 12 months of rent was due (January-December 2022) with rent being $15,000 per month, totaling $180,000. At a contempt hearing before Judge Grant Brantley on September 29, 2023, Jackson's attorney expressed that the court needed to explain "how it concluded that $220,264.52 had to be deposited by Derrick Jackson by December 31st 2022," to which Judge Brantley essentially asserted his 5th Amendment Right to Remain Silent by responding: "Mr. McMaster, I'm not going to be cross-examined." Hearing Transcript, Paramount Properties v. Derrick Jackson, September 29, 2023 (PDF) (https://thewikilaw.org/wiki/images/f/fa/ParamountvJackson_Transcript_09-29-2023.pdf)

16. "Since the beginning of COVID-19, the Fulton County Court System has amassed a significant and unprecedented level of cases. Project ORCA will address this challenge by utilizing a combination of capacity expansion and productivity enhancement initiatives to expedite the case adjudication process." Project ORCA and Justice System Update (June 21, 2023) (https://thewikilaw.org/wiki/images/d/d0/Fulton_County_Justice_Update_for_06_21_23.pdf)

17. Lifetime Achiever: Judge Adele Grubbs (https://www.law.com/dailyreportonline/2020/08/24/lifetime-achiever-judge-adele-grubbs/)

18. Retiring Cobb Judge Adele Grubbs To Be Honored (https://patch.com/georgia/southcobb/retiring-cobb-judge-adele-grubbs-be-honored)

19. Portrait unveiled as colleagues honor Cobb Judge Brantley (https://www.yahoo.com/video/portrait-unveiled-colleagues-honor-cobb-223900910.html)

20. In 2005, Judge Grant Brantley ran against former Georgia Supreme Court Justice, Leah Ward Sears accusing Sears of being a "judicial activist." The irony is that Brantley is now here engaging in judicial activism himself. See Brantley taking on activist judge (https://www.timesenterprise.com/news/local_news/brantley-taking-on-039-activist-judge-039/article_4e836170-338a-5be3-ae67-d3faed34c66c.html)

21. Cobb Superior Court judges to get 4 percent county pay raise (https://eastcobbnews.com/cobb-superior-court-judges-to-get-4-percent-county-pay-raise/#:~:text=Their%20salaries%20are%20set%20by,went%20to%20qualified%20county%20employees.)

22. O.C.G.A. § 15-1-9.2 (2022)

23. Portrait unveiled as colleagues honor Cobb Judge Brantley (https://sports.yahoo.com/portrait-unveiled-colleagues-honor-cobb-223 900910.html)

24. On May 18, 2015, Paulding County Industrial Building Authority attorneys filed a motion for the recusal of the Honorable Judge G. Grant Brantley on hearing a lawsuit brought by six local residents to prevent the development of Silver Comet Field where the "plaintiff's" attorney, Michael Bowers (father of Cobb County State Court Judge, Carl Bowers), was Brantley's former superior officer in the military and 30 year business and political associate.Judge Brantley Needs to Step Aside (http://letpauldingfly.com/im g/LPFRecusalRelease-6-11-2015.pdf). According to the article, *Let Paulding Fly: Judge Brantley Needs To Step Aside*, "Judge Brantley and Mr. Bowers have a long and significant history that spans more than 30 years. Judge Brantley was Mr. Bowers' subordinate when he served as Mr. Bowers' lawyer as a staff judge advocate in the Air National Guard for 10 years, until 1992. During Mr. Bowers' 1994 re-election campaign for Georgia Attorney General, Judge Brantley served as his treasurer. When Mr. Bowers ran for Governor in 1998, Judge Brantley again served as treasurer and contributed $5,000 to the campaign. From 2001 to 2007, Judge Brantley was Of Counsel to Mr. Bowers' law firm – a business relationship that involved the firm paying for all of Judge Brantley's overhead and a 50/50 split of all his fees. In 2004, Judge Brantley ran for a seat on the Georgia Supreme Court and received almost $20,000 in campaign contributions from Bowers himself and Bowers' law firm and family members. In 2009, when Judge Brantley sued to collect legal fees owed him, his attorney was Mr. Bowers, the case went on until 2012. In addition, this week it was revealed that Mr. Bowers' son was Judge Brantley's former law clerk." *See also* secure (PDF) version (https://thewikilaw.org/ wiki/images/c/ce/Let_Paulding_Fly_Recusal_Release-6-11-2015.pdf). "In 2003, [Mike] Bowers started a government relations and lobbying firm with his son Bruce Bowers and John Watson, the political consultant for Georgia's then-governor, Sonny Perdue. Bowers said they had a simple objective: 'to make money.'" *Mike Bowers*, Wikipedia (https://en.wikipedia.org/wiki/Mike_Bowers#c ite_note-22) (citing Massey, Bowers & Hembree (19 Jan 2003). "New business for Bowers". *Atlanta Business Chronicle*. Retrieved 11 July 2012.)

25. O.C.G.A. § 15-1-9.2 (2022)

26. In 2021, Cobb County Superior Court Judge, Robert D. Leonard II, assigned Judge Adele Grubbs to a case after it was discovered that Judge Leonard appointed a Guardian Ad Litem (GAL) to a case in consideration of the GAL's substantial campaign contribution. *See* Cobb County - Judicial Misconduct: A Participant in Cobb's Notorious 'Pay-to-Play' Way (https://thewikilaw.org/wik i/index.php?title=Cobb_County_-_Judicial_Misconduct#A_Participant_in_Cobb.27s_Notorious_.22Pay-to-Play.22_Way). Judge Grubbs then sanctioned the husband (who was not even a party to the case) of the mother fighting for custody. The Court of Appeals reversed Grubbs' unlawful order against the nonparty. *Ellis v. Seaver*, 367 Ga.App. 322, 885 S.E.2d 817 (2023)("Because Ellis was not a party to the case, the trial court lacked authority under OCGA § 9-15-14 to impose these fees. We therefore reverse the trial court's award.").

---

Retrieved from "https://thewikilaw.org/wiki/index.php?title=Fulton_Judiciary_Weaponizes_Project_ORCA&oldid=1686"

This page was last edited on 12 December 2023, at 10:25.