**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta
MAR 23 2026
KEVIN P. WEIMER, Clerk
By: Deputy Clerk

MATTHEW D. MCMASTER, )
)
Plaintiff, ) CASE NO.
)
v. ) 1:25-CV-06726-JPB
)
GEORGE G. BRANTLEY, and )
CHRISTOPHER HANSARD, )
)
Defendants. )

---

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO CHRISTOPHER HANSARD'S MOTION TO DISMISS**

---

COMES NOW Plaintiff MATTHEW D. MCMASTER, pro se, and files this *Plaintiff's Response In Opposition To Christopher Hansard's Motion To Dismiss* ("Response") showing why this Court should **deny** Defendant Hansard's Motion to Dismiss [Doc. 10] filed with this Court on March 6, 2026.

## I. RESPONSE TO DEFENDANT'S INTRODUCTION

*Defendant Hansard's Brief in Support of His Motion to Dismiss* [Doc. 10-1] ("Brief") consists of roughly 18 sentences (not including footnotes) and only two of those sentences are supported by references to Plaintiff's Complaint [Doc. 1], which is the only pleading on the record as of the filing of this Response. (Doc. 10-1 at 1-4). Defendant has not filed an answer in this action. At this stage, the Court

cannot consider Defendant's unsupported allegations in his Introduction [Doc. 10-1 at 1-4] without converting Defendant's Motion to one of summary judgment. *See* Fed. R. Civ. Pro. 12.

Further, of the few paragraphs that Defendant does cite to in his Brief [Doc. 10-1] from Plaintiff's Complaint [Doc. 1], which include Paragraphs 4, 19, 24, 25, 49, 64 and 65, do not support his assertions or are otherwise *mooted* points. (Doc. 10-1 at pp. 2-3). Specifically, Defendant asserts

> Plaintiff alleges he is not asking this Court to intervene or review a state court decision (Doc. 1 at ¶¶ 4, 49), but that is exactly what he is asking this Court to do. (Id. at p. 35). He tells this Court to interfere in a state court case where an unrecused, qualified state court judge is presiding and declare said judge can have no jurisdiction over Plaintiff (again, an attorney) because he did not rule in Plaintiff's favor in other cases before the same judge (Id. at ¶19, 24,) or did not allow Plaintiff to act a particular way in court. (Id. at ¶25).

*Id.* However, Plaintiff is no longer an attorney to the specific state proceeding referenced in Plaintiff's prayers on Page 35 of his Complaint—the prayers Defendant is presumably referring to. (Doc. 10-1 at p. 2); (Doc. 1 at p. 35). Thus, that particular issue complained about by Defendant is *moot.*

Moreover, Defendant's citations to Paragraph's 19, 24 and 25 are not helpful for his assertions that "He tells this Court to interfere in a state court case where an unrecused, qualified state court judge is presiding and declare said judge can have no jurisdiction over Plaintiff (again, an attorney) because he did not rule in Plaintiff's

favor in other cases before the same judge (Id. at ¶19, 24,) or did not allow Plaintiff to act a particular way in court. (Id. at ¶25)."

First, Paragraph 19 of Plaintiff's Complaint [Doc. 1] states:

> In March and April of 2024, Plaintiff filed multiple recusal motions against Judge Brantley in that Fulton County Superior Court case and all were denied by Judge Brantley without re-assignment under USCR 25.3. *See In re Murchison*, 349 U.S. 133, 136 (1955) ("No man can be a judge in his own case."). Those motions could not be appealed by Plaintiff because Plaintiff was forced to withdraw from that action in August of 2024 due to additional retaliatory conduct by Judge Brantley that *chilled* Plaintiff's willingness to continue representing his client in that case. It was that same retaliatory conduct that caused Plaintiff to initiate Case No. 1 :24-CV-3436-JPB on August of 2024.

Thus, it was Brantley's "retaliatory conduct" subsequent to those motions to recuse that induced this action against Judge Brantley, in addition to the retaliatory conduct articulated in Paragraphs 24 and 25. *See* (Doc. 1 ¶¶ 24-25). Paragraphs 24 and 25 state:

> At a July 2024 hearing in *Lowe v. Lowe*-which was after the May 2024 election-Judge Brantley abruptly reversed his recording allowance and denied Plaintiff's next recording request in *Lowe v. Lowe* and signed an order (drafted by Attorney Leonard, who was an attorney of record in *Lowe v. Lowe* and also the spouse of Cobb County Superior Court Judge Robert D. Leonard II) that stated Plaintiff's requests to record those hearings pursuant to USCR 22 were "harassing." (Exhibit H 1 l(i)). Katie Leonard then took Judge Brantley's rubberstamped order (that she drafted) as justification to go on social media and personally attack Plaintiff. (Exhibit I). It should be noted that while she never states Plaintiff's name in the TikTok videos, Mrs. Leonard does flash a court document that displays Plaintiff's name to be sure that her viewers saw it. Mrs. Leonard removed the videos from TikTok some months after the complaint against her (among other state actors) was filed in Case

> No. 1 :24-CV-3436-JPB. Plaintiff has since voluntarily dismissed that action against Mrs. Leonard without prejudice.
>
> 25. At the June 2024 Lowe v. Lowe hearing regarding Plaintiff's request to record, when Attorney Leonard made argument that Plaintiff wished to rebut, Plaintiff asked Judge Brantley if Plaintiff may speak and Judge Brantley inquired: "About what?" (Exhibit J). As Plaintiff began to answer, Judge Brantley cut him off stating, "No. Have a seat sir. You've used enough of this proceedings' time." Id. Judge Brantley then proceeded to call the "Deputy" to induce Plaintiff to seat promptly. Id. Plaintiff did in fact seat himself promptly. Id.

Finally, nothing on the record establishes that Judge Brantley was "unrecused" and "qualified" to preside over *Murray v. Hill* when Plaintiff was the attorney of record. In fact, just the opposite is true. The record shows that Judge Brantley was within a class of recused and disqualified judges, yet interfered with Plaintiff's client's case by leveraging Defendant Hansard's administrative authority in accordance with the newly implemented county policy. (Doc. 1 ¶¶ 30-32). This pattern of mischaracterization continues through Defendant's rendition of the factual background. *See* (Doc. 10-1 at pp. 4-11).

Regardless of the above, Plaintiff intends to exercise his right to amend his Complaint pursuant to Federal Rule of Civil Procedure Rule ("FDRC") 15(a)(1)(B) within the statutory period allowed, which will render all pending motions to dismiss *moot*. *See* FDRC 6(d). Thus, Defendant's Motion must be **denied**.

## II. RESPONSE TO DEFENDANT'S ARGUMENT

First and foremost, Defendant Hansard improperly argues that because Defendant is a county employee, he cannot be subject to the jurisdiction of this Court under 42 U.S.C. § 1983. (Doc. 10-1 at pp. 14-15). While Defendant Hansard may get his paycheck from the county, **Defendant Hansard is a *state actor* for purposes of 42 U.S.C. § 1983 and his role is inextricably intertwined with Defendant Brantley's in this Action.**

Defendant makes three additional primary arguments for dismissal in this action, which include: (a) Plaintiff lacks standing [Doc. 10-1 at pp. 15-20]; (b) Plaintiff's claims are barred under Georgia's "Home Rule" [Doc. 10-1 at pp. 21-22]; and (c) Defendant is protected by the *Monell* doctrine [Doc. 10-1 at pp. 23-24]. All three fail for reasons shown below.

### Legal Standard

On a Rule 12(b)(6) motion to dismiss, the Court must accept the non-movant's (Plaintiff's) allegations as true and, though not required to draw Plaintiff's same inferences, the Court **must** construe the Amended Complaint and draw all reasonable inferences therefrom **in Plaintiff's favor**. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Duke v. Cleland*, 5.3d 1399, 1402 (11th Cir. 1993); *Sinaltrainal v. The Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).

**A. Plaintiff Has Standing to Bring This Action.**

To prove standing Plaintiff must show that (1) Plaintiff was injured; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) the injury is likely to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

Based on the Complaint, Plaintiff has standing based on (a) the imposition of a coercive Hobson's choice between enduring retaliation and withdrawing as counsel; (b) completed destruction of existing attorney-client relationships; and (c) ongoing *chilling* of Plaintiff's professional advocacy. (Doc. 1 ¶¶ 3, 6, 19-20, 26-28, 32-35, 51-52, 73, 84, 89, 92, 101). Here, Plaintiff has standing. (Doc. 1 ¶¶ 36-53).

**1. Plaintiff's Injuries Are Concrete and Ongoing**

The injuries are personal to Plaintiff (e.g., economic, professional, and First Amendment) and are concrete, ongoing, and redressable through prospective relief.

*a. Repeated Hobson's Choice Imposed on Plaintiff.*

When Defendant Hansard—by and through his administrative conduct—knowingly and intentionally places Plaintiff under the authority of a judge previously disqualified and allegedly acting with retaliatory motive into Plaintiff's cases as a senior judge, Plaintiff is confronted with only two options: (a) remain in the case and endure harassment, hostile treatment, and the threat of retaliatory sanctions; or (b) withdraw as counsel to protect himself from retaliation. *See* (Doc.

1 ¶¶ 3, 6, 19-20, 26-28, 32-35, 51-52, 73, 84, 89, 92, 101). Defendants, as "state actors," may not condition Plaintiff's exercise of his profession or the continuation of lawful representation on submission to retaliatory punishment. This coercive choice constitutes a present, concrete injury to Plaintiff personally.

*b. Destruction of Attorney Client Relationships.*

Defendant Brantley's conduct has already forced Plaintiff to withdraw from two previous active representations. (Doc. 1 ¶¶ 28, 32-33). Each forced withdrawal terminates an existing attorney-client relationship, deprives Plaintiff of ongoing legal work, and causes direct economic and professional harm. This injury is complete, concrete, and particularized. It does not depend on speculation about future events or on the outcome of any state-court proceeding.

*c. Ongoing Chilling and Interference with Plaintiff's Law Practice.*

Defendant Brantley's continued interference with Plaintiff's cases as a senior judge, made possible by the administrative assignment conducted by Defendant Hansard, limits Plaintiff's ability to represent his clients in a court of law, *chills* Plaintiff's exercise of rights to associate, advocacy, and right to petition to record under USCR 22. (Doc. 1 ¶¶ 17-18, 25-26, 41, 70, 77). Plaintiff cannot assure current or prospective clients that representation will be free from retaliatory judicial interference from Brantley or that requests to record under USCR 22 will not be met with retaliation. As a result, Plaintiff is deterred from continuing

representations and engaging in protected advocacy and speech when Defendants use administrative tactics to intervene in Plaintiff's cases. *See* (Doc. 1 ¶ 92). This ongoing abuse and threat of abuse constitutes an independent injury distinct from any single state case, pleading, order, or motion.

### 2. Plaintiff's Injuries Are Redressable

Plaintiff's requested relief—declaratory orders removing Defendants' motive for interfering with Plaintiff's cases—would directly address the alleged ongoing and future violations described above. (Doc. 1 ¶¶ 1, 4, 13, 94, 102); (Doc. 1 at pp. 34, (a)-(c), 36(d)-(i)); *See Lewis v. Gov. of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (holding that relief is redressable if it significantly increases the likelihood of preventing harm). Thus, Plaintiff's claims are redressable.

Because Plaintiff satisfies all standing requirements as shown above, this Court has subject matter jurisdiction under Article III and 28 U.S.C. § 1331.

### 3. There Are No Other State Remedies

28 U.S.C. § 2021(a) clearly states that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, <u>**whether or not further relief is or could be sought**</u>." (Emphasis added). This is consistent with the rulings from the United States Supreme Court on the matter. *See e.g.*, *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293 (1943); *Steffel v. Thompson*, 415 U.S. 452

(1974) (reinforcing that declaratory relief is a flexible remedy and does not mandate proving no other remedies exist, though courts may consider alternative remedies in their discretion.). Further, Plaintiff's Complaint [Doc. 1] plausibly establishes that there is no adequate state remedy, making that issue a factual question not appropriate for Defendant's facial attack on the pleadings.

The Eleventh Circuit has clarified that state remedies are inadequate when they cannot fully address federal constitutional violations. *See Duke v. Massey*, 87 F.3d 1226, 1233 (11th Cir. 1996) (holding that state remedies do not bar federal declaratory relief where federal rights are at stake). Here, any state processes existing under the guise that they are "remedies" for the relief sought by Plaintiff are tragically inadequate. *See Mitchum v. Foster*, 407 U.S. 225, 242 (1972) ("The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial.'").[1]

[1] Defendant never argues that mandamus is an adequate remedy. Georgia law makes clear that mandamus is not to be used in place of the USCR 25 et seq. recusal process. O.C.G.A. § 9-6-20 explicitly states that "no writ of mandamus to compel the removal of a judge shall issue where no motion to recuse has been filed, if such motion is available, or where a motion to recuse has been denied after assignment to a separate judge for hearing." *Id.*; *see e.g., Gray v. Manis*, 647 S.E.2d 588 (2007); *James v. Davis*, 629 S.E.2d 820 (2006).

First and foremost, the appellate process is for the litigants, not their attorneys. The fact that Plaintiff's advocacy was *chilled* by Defendant Brantley's past conduct against Plaintiff and against those similarly situated as Plaintiff—forcing Plaintiff to (i) terminate his attorney-client relationship resulting in (ii) file a motion to withdraw as counsel, (iii) file this federal lawsuits, all resulting in Brantley's "voluntary" cessation—most clearly exposes Defendant's flawed premise.

Second, the Constitution requires a neutral decision-maker in the first instance, not just the theoretical availability of post hoc remedies that are structurally incapable of success. *See Ward v. Village of Monroeville*, 409 U.S. 57, 61–62 (1972) (finding due process violation where structural bias tainted the tribunal despite the availability of appeal); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 877 (2009) (due process demands recusal where the probability of bias is "too high to be constitutionally tolerable"). Forcing litigants to expend resources on serial, futile recusal motions and appeals not only denies them a meaningful opportunity to be heard before an impartial tribunal, but also *chills* their First Amendment right to petition the courts. *See California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510–11 (1972) (First Amendment protects access to courts from systemic barriers); *BE&K Constr. Co. v. NLRB*, 536 U.S.

516, 532 (2002) (litigation costs and burdens cannot be imposed in a way that penalizes petitioning activity).

Third, The Georgia Court of Appeals cannot "un-preside" a trial judge, and Plaintiff is not asking this Court to review any rulings against Plaintiff. If there was a remedy outside of this Court, Defendants would not so brazenly violate people's constitutional rights in the manner that they do, abusing his judicial authority under "color of law" the way they do. Nor can an appellate court provide a "prospective remedy" to deter judges who intend to retaliate against Plaintiff with impunity. The Georgia appellate courts cannot restore Plaintiff with time and money forever lost at the hands of a trial judge discriminatorily acting with intentional malfeasance against Plaintiff and his clients. Nor does the Court of Appeals have the power to sanction trial judges or provide for discovery procedures to prove a judge's bias. If the Georgia Court of Appeals had the ability to "un-preside" a bias judge, we would not be in this Court, at this time, in this case. Prospective relief from this Court—and this Court alone—can provide the deterrent Plaintiff needs from Defendants' agenda.

In short, there are no adequate remedies for preventing a bias judge with retaliatory motives and animus from using administrative loopholes to interfere with Plaintiff's cases. If there was, Defendants would not successfully interfere

with Plaintiff's rights to petition, advocate, associate and free speech in the manner that they do, continuously and with impunity as they do. *See* (Doc. 1 ¶¶ 44-53).

**B. The "Home Rule" Is Inapplicable.**

Defendant attempts to invoke the Georgia Constitution's "home rule" exclusion and Eleventh Circuit decisions like *Turquitt v. Jefferson Cnty.*, 137 F.3d 1285 (11th Cir. 1998) (en banc), and *Higdon v. Tusan*, 746 F. App'x 805 (11th Cir. 2018). (Doc. 10-1 at pp. 21-22). However, those cases addressed whether a county can be held liable for damages arising from judicial actions and do not govern whether federal courts may enjoin ongoing constitutional violations under § 1983. Moreover, the "dismissal of the claims [in *Higdon*] was affirmed because the county had no control over the courts or court personnel." And contra to *Higdon*, Cobb County does **in fact** have control over court personnel—Defendant as Superior Court Admnistrator—in this case. More specifically, the Cobb County Administrator reports to all Judges of the Cobb County Superior Court. Because Cobb County does *de facto* control court personnel (Defendant) in this action, the "home rule" is inapplicable here. Whether Defendant receives his paycheck from the Cobb County tax payer or the State of Georgia is not part of the analysis.

Further, the Eleventh Circuit has made clear that "the Ex parte Young doctrine applies regardless of state-law limitations on county or state policymaking" where a plaintiff seeks federal prospective relief. *Luckey*, 860 F.2d

at 1015–16. Thus, Federal constitutional claims cannot be nullified by Georgia's home rule provision.

### C. *Monell* Is Inapplicable.

While it is true that *Monell* governs municipal liability for damages, where a plaintiff seeks prospective relief (e.g., declaratory and/or injunctive relief) against an official acting in his official capacity, the action is permitted even absent allegations of a county "policy or custom." The Supreme Court has confirmed that "[o]fficial-capacity actions for prospective relief are not treated as actions against the State." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). The Eleventh Circuit through case law has repeatedly applied this principle. *See Luckey* at 1015–16 (allowing prospective relief against state officials notwithstanding Monell); *Young Apartments* at 1047 ("A local government official may be sued in his official capacity for prospective equitable relief without proof of a municipal policy or custom."); *see also Grizzle v. Kemp*, 634 F.3d 1314, 1319–20 (11th Cir. 2011).

Because Plaintiff seeks a declaration barring Defendants from exercising their official functions in a retaliatory fashion against Plaintiff, the claim is squarely within the 11th Circuit's line of authority.

## III. CONCLUSION

For the foregoing reasons, this Court must **deny** Defendant's Motion to Dismiss [Doc. 10] in its entirety. Plaintiff has standing, states plausible claims under § 1983, and is entitled to declaratory (and/or injunctive) relief. Regardless, Plaintiff intends to amend his Complaint [Doc. 1] in its entirety within the statutory period, which will render Defendant's Motion *moot*.

Submitted this 23rd day of March, 2026.

Respectfully submitted,

/s/____________________

Matthew D. McMaster
*Pro se*
GA Bar No. 218044

OFFICE
12 Powder Springs St.
Suite 230
Marietta, GA 30064
(770) 362-6490 (cell)
(800) 890-3981 (office)
mdmcmaster@mcmasterlegal.com

HOME
1095 New Haven Dr. SW
Marietta, GA 30064
(770) 362-6490 (cell)

## CERTIFICATE OF SERVICE

**I hereby certify that the foregoing submission was prepared using Times New Roman 14-point font in compliance with L. Rule 5.1(C)** and that I have caused a copy of the foregoing Response to be deposited in the United States Mail, postage prepaid, addressed to the Defendant's attorneys pursuant to Rule 5(b)(1) as follows:

**Keith Pridgen**
Georgia Department of Law
40 Capitol Square SW
Atlanta, GA 30334

**Melissa Tatum**
Office of the Cobb County Attorney
100 Cherokee Street, Suite 350
Marietta, Georgia 30090

Respectfully submitted this 23rd day of March 2026.

/s/ [signature]
Matthew D. McMaster
*Plaintiff, Pro se*
GA Bar No. 218044

1095 New Haven Dr. SW
Marietta, GA 30064
(770) 362-6490 (cell)
(800) 890-3981 (office)
mdmcmaster@mcmasterlegal.com

12 Powder Springs St., Suite 230
Marietta, GA 30064
(800) 890-3981 (office)
(800) 890-3981 (fax)