FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta
MAR 23 2026
KEVIN P. WEIMER, Clerk
By: Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| MATTHEW D. MCMASTER,<br><br>Plaintiff,<br><br>v.<br><br>GEORGE G. BRANTLEY, and<br>CHRISTOPHER HANSARD,<br><br>Defendants. | ) | CASE NO.<br><br>1:25-CV-06726-JPB |

---

**BRIEF IN RESPONSE TO THE HONORABLE GEORGE G. BRANTLEY'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR DECLARATORY RELIEF**

---

COMES NOW Plaintiff, MATTHEW D. MCMASTER, pro se, and files this *Brief in Response to the Honorable Grant G. Brantley's Motion to Dismiss Plaintiff's Complaint for Declaratory Relief* ("Response").

## I. INTRODUCTION

Defendant Judge George G. Brantley, by and through his Motion to Dismiss [Docs. 9 and 9-1], comes out of the gate with accusations of attempted "judge shopping" against Plaintiff, an attorney residing in Cobb County, for the filing of this action seeking protection from Defendant's unconstitutional conduct. (Doc. 9-1 at p. 2). If there was ever a question of the existence of bias or Defendant's motivation for retaliation against Plaintiff, the Court need not look further. *See*

(Id.). Clearly, any attempt by Plaintiff to seek protection from Defendant, or any state court judge, will be recharacterized as "judge shopping" and met with harassment, violations of Plaintiff's rights, destruction of Plaintiff's attorney-client relationships and loss of business.[1] (Doc. 1 ¶¶ 16-19, 24, 28, 51-52); (Doc. 1-10 at p. 2); *see* (Doc. 9-1 at p. 2, fn. 1). Defendant's bias against Plaintiff, without more, is unequivocally established by the record on its face [Doc. 9-1] and the prospective relief sought by Plaintiff is both proper and necessary.

Aside from Defendant Brantley's personal attacks on Plaintiff, Defendant's legal arguments in his Motion to Dismiss fail. *See* (Doc. 9-1 at pp. 9-23). This case is not an appeal of any state-court ruling. (Doc. 1 ¶¶ 6, 19, 44, 73, 76). Plaintiff does not seek to invalidate any order or direct how any state case should be decided. (Doc. 1 ¶ 4, pp. 34-35). Instead, Plaintiff brings this narrow § 1983 action seeking prospective declaratory relief addressing ongoing, non-adjudicative administrative conduct—one clear example, the reassignment and retention of judicial authority over Plaintiff despite prior disqualifications and the refusal to rule on an unopposed withdrawal motion in a manner that perpetuates jurisdiction

---

[1] It is worth noting that Paragraph 2 of Defendant's Introduction [Doc. 9-1 at pp. 2-3] essentially asks this Court to prejudice Plaintiff for other cases that were previously dismissed without prejudice—which of course functionally defeats the purpose of "without prejudice." It is further worth noting that Defendant Brantley shares the same counsel as Judge Alan G. Poole from Plaintiff's prior action, Case No. 1:24-CV-3436-JPB, in which Judge Poole accused Plaintiff's allegations of being "inflammatory."

over Plaintiff personally. (Doc. 1 ¶¶ 60, 72, 73, 77, 89, 101). Defendants' constitutional violations arise not from the correctness of any ruling, but from the way Defendants exercise administrative authority to control, retain, and repeatedly reassert jurisdiction over Plaintiff for the purpose of retaliating and harassing Plaintiff in an ongoing and prospective way. (Doc. 1 ¶¶ 57, 75, 91, 94, 97). And, because the Complaint challenges conduct that is prospective, administrative, and independent of any state-court judgment, Defendant's jurisdictional and immunity arguments fail. (Doc. 1 ¶¶ 61, 87, 89, 91, 101).

Regardless of the above, Plaintiff intends to exercise his right to amend his Complaint pursuant to Federal Rule of Civil Procedure Rule ("FDRC") 15(a)(1)(B) within the statutory period allowed, which will render all pending motions to dismiss *moot*. *See* FDRC 6(d). Thus, Defendant's Motion must be **denied**.

## II. ARGUMENT

### A. Plaintiff Has Standing to Bring This Action

Defendant argues that Plaintiff lacks standing because Plaintiff's alleged injuries are speculative.[2] (Doc. 9-1 at 11-12). To establish standing, Plaintiff must

---

[2] Defendant interestingly claims that Plaintiff alleges that "Judge Brantley conspired have himself appointed as an act of retaliation." (Doc. 9-1 at p. 12). While all parties can certainly agree that Plaintiff's facts as alleged by Plaintiff would substantiate a claim for conspiracy, Plaintiff never alleges a conclusion of "conspiracy" in his Complaint. *See generally* (Doc. 1).

show an injury in fact that is concrete, particularized, and actual or imminent.[3] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Based on the Complaint, Plaintiff has standing based on (a) the imposition of a coercive Hobson's choice between enduring retaliation and withdrawing as counsel; (b) completed destruction of existing attorney-client relationships; and (c) ongoing *chilling* of Plaintiff's professional advocacy. (Doc. 1 ¶¶ 3, 6, 19-20, 26-28, 32-35, 51-52, 73, 84, 89, 92, 101). Here, Plaintiff has standing. (Doc. 1 ¶¶ 36-53).

**1. Plaintiff's Injuries Are Concrete and Ongoing**

The injuries are personal to Plaintiff (e.g., economic, professional, and First Amendment) and are concrete, ongoing, and redressable through prospective relief.

*a. Repeated Hobson's Choice Imposed on Plaintiff.*

When Defendant Brantley inserts himself into Plaintiff's cases as a senior judge, Plaintiff is confronted with only two options: (a) remain in the case and endure harassment, hostile treatment, and the threat of retaliatory sanctions; or (b) withdraw as counsel to protect himself from retaliation. *See* (Doc. 1 ¶¶ 3, 6, 19-20, 26-28, 32-35, 51-52, 73, 84, 89, 92, 101). Defendants, as "state actors," may not condition Plaintiff's exercise of his profession or the continuation of lawful

[3] Defendant attempts to recharacterize Plaintiff's injuries as alleged—presumably in an attempt to trigger an abstention "knee jerk" response by this Court. *See* (Doc. 9-1 at p. 12).Plaintiff respectfully requests that this Court take its time and thoroughly scrutinize Defendant's assertion here.

representation on submission to retaliatory punishment. This coercive choice constitutes a present, concrete injury to Plaintiff personally.

*b. Destruction of Attorney Client Relationships.*

Defendant Brantley's conduct has already forced Plaintiff to withdraw from two previous active representations. (Doc. 1 ¶¶ 28, 32-33). Each forced withdrawal terminates an existing attorney-client relationship, deprives Plaintiff of ongoing legal work, and causes direct economic and professional harm. This injury is complete, concrete, and particularized. It does not depend on speculation about future events or on the outcome of any state-court proceeding.

*c. Ongoing Chilling and Interference with Plaintiff's Law Practice.*

Defendant Brantley's continued interference with Plaintiff's cases as a senior judge limits Plaintiff's ability to represent his clients in a court of law, *chills* Plaintiff's exercise of rights to associate, advocacy, and right to petition to record under USCR 22. (Doc. 1 ¶¶ 17-18, 25-26, 41, 70, 77). Plaintiff cannot assure current or prospective clients that representation will be free from retaliatory judicial interference from Brantley or that requests to record under USCR 22 will not be met with retaliation. As a result, Plaintiff is deterred from continuing representations and engaging in protected advocacy and speech when Defendants use administrative tactics to intervene in Plaintiff's cases. *See* (Doc. 1 ¶ 92). This

ongoing abuse and threat of abuse constitutes an independent injury distinct from any single state case, pleading, order, or motion.

**2. Plaintiff's Injuries Are Redressable**

Plaintiff's requested relief—declaratory orders removing Defendant Brantley's motive for interfering with Plaintiff's cases—would directly address the alleged ongoing and future violations described above. (Doc. 1 ¶¶ 1, 4, 13, 94, 102); (Doc. 1 at pp. 34, (a)-(c), 36(d)-(i)); *See Lewis v. Gov. of Ala.*, 944 F.3d 1287, 1301 (11th Cir. 2019) (holding that relief is redressable if it significantly increases the likelihood of preventing harm). Thus, Plaintiff's claims are redressable.

Because Plaintiff satisfies all standing requirements as shown above, this Court has subject matter jurisdiction under Article III and 28 U.S.C. § 1331.

**3. There Are No Other State Remedies**

28 U.S.C. § 2021(a) clearly states that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, **whether or not further relief is or could be sought**." (Emphasis added). This is consistent with the rulings from the United States Supreme Court on the matter. *See e.g.*, *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293 (1943); *Steffel v. Thompson*, 415 U.S. 452 (1974) (reinforcing that declaratory relief is a flexible remedy and does not

mandate proving no other remedies exist, though courts may consider alternative remedies in their discretion.). Further, Plaintiff's Complaint [Doc. 1] plausibly establishes that there is no adequate state remedy, making that issue a factual question not appropriate for Defendant's facial attack on the pleadings. (Doc. 1 ¶¶ 44-53). However, Defendant continues to argue that Plaintiff has an adequate state remedy. (Doc. 9-1 at pp. 15, 17-18). Thus, for the sake of *arguendo*, Plaintiff addresses the issue of the absence of an adequate remedy as follows.

The Eleventh Circuit has clarified that state remedies are inadequate when they cannot fully address federal constitutional violations. *See Duke v. Massey*, 87 F.3d 1226, 1233 (11th Cir. 1996) (holding that state remedies do not bar federal declaratory relief where federal rights are at stake). Here, any state processes existing under the guise that they are "remedies" for the relief sought by Plaintiff are tragically inadequate. *See Mitchum v. Foster*, 407 U.S. 225, 242 (1972) ("The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial.'").[4]

[4] Defendant never argues that mandamus is an adequate remedy. Georgia law makes clear that mandamus is not to be used in place of the USCR 25 et seq. recusal process. O.C.G.A. § 9-6-20 explicitly states that "no writ of mandamus to compel the removal of a judge shall issue where no motion to recuse has been

First and foremost, the appellate process is for the litigants, not their attorneys. The fact that Plaintiff's advocacy was *chilled* by Defendant's past conduct against Plaintiff and against those similarly situated as Plaintiff—forcing Plaintiff to (i) terminate his attorney-client relationship resulting in (ii) file a motion to withdraw as counsel, (iii) file this federal lawsuits, all resulting in Brantley's "voluntary" cessation—most clearly exposes Defendant's flawed premise.

Second, the Constitution requires a neutral decision-maker in the first instance, not just the theoretical availability of post hoc remedies that are structurally incapable of success. *See Ward v. Village of Monroeville*, 409 U.S. 57, 61–62 (1972) (finding due process violation where structural bias tainted the tribunal despite the availability of appeal); *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 877 (2009) (due process demands recusal where the probability of bias is "too high to be constitutionally tolerable"). Forcing litigants to expend resources on serial, futile recusal motions and appeals not only denies them a meaningful opportunity to be heard before an impartial tribunal, but also *chills* their First Amendment right to petition the courts. *See California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510–11 (1972) (First Amendment protects

filed, if such motion is available, or where a motion to recuse has been denied after assignment to a separate judge for hearing." *Id.*; *see e.g., Gray v. Manis*, 647 S.E.2d 588 (2007); *James v. Davis*, 629 S.E.2d 820 (2006).

access to courts from systemic barriers); *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 532 (2002) (litigation costs and burdens cannot be imposed in a way that penalizes petitioning activity).

Third, The Georgia Court of Appeals cannot "un-preside" a trial judge, and Plaintiff is not asking this Court to review any rulings against Plaintiff. If there was a remedy outside of this Court, Defendant would not so brazenly violate people's constitutional rights in the manner that he does, abusing his judicial authority under "color of law" the way he does. Defendant's assertion that "a state appellate process is an adequate remedy at law" is an empty statement without any evidence to support it. (Doc. 9-1 at 12-13). While Defendant does cite to cases to support the "appellate remedy theory," the cases cited are not comparable to this one here. The appellate courts cannot "un-violate" Plaintiff's rights. Nor can an appellate court provide a "prospective remedy" to deter judges who intend to retaliate against Plaintiff with impunity. The Georgia appellate courts cannot restore Plaintiff with time and money forever lost at the hands of a trial judge discriminatorily acting with intentional malfeasance against Plaintiff and his clients. Nor does the Court of Appeals have the power to sanction trial judges or provide for discovery procedures to prove a judge's bias. If the Georgia Court of Appeals had the ability to "un-preside" a bias judge, we would not be in this Court, at this time, in this case. Other judges do not seem to maintain Defendant's same tendency to interfere

with Plaintiff's advocacy—at least not to the extent of reaching the threshold of needing a remedy from this Court. Prospective relief from this Court—and this Court alone—can provide the deterrent Plaintiff needs from Defendant's agenda.

In short, there are no adequate remedies for preventing a bias judge with retaliatory motives and animus from using administrative loopholes to interfere with Plaintiff's cases. If there was, Defendant would not successfully interfere with Plaintiff's rights to petition, advocate, associate and free speech in the manner that he does, continuously and with impunity as he does. *See* (Doc. 1 ¶¶ 44-53).

**B. *Rooker-Feldman* and *Younger-Harris* Are Inapplicable.**

On January 20, 2026, Judge George G. Brantley granted Plaintiff's motion to withdraw as counsel of record from Cobb County Superior Court case *Murray v. Hill*. Thus, there is no ongoing state proceeding nor order to appeal. However, due to Plaintiff's continual practice across the State of Georgia and Cobb County in particular, the voluntary cessation doctrine dictates that these matters are still ripe for adjudication, given the ongoing nature of the injuries caused by Defendants. *Already LLC v. Nike*, 133 S.Ct. 721, (2013) ("A defendant cannot, however, automatically moot a case simply by ending its unlawful conduct once sued.") (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152).

**C. Plaintiff Is Entitled to Declaratory Relief.**

In Section III of Defendant's Brief [Doc. 71-1], Defendant argues that Plaintiff is not entitled to declaratory relief for lack of Article III standing. However, Plaintiff satisfies all standing requirements under Article III and 28 U.S.C. § 1331 as shown in Section II.A *supra*. *See also* (Doc. 1 ¶¶ 36-58). This Court also has subject-matter jurisdiction over Plaintiff's § 1983 claims alleging First Amendment and Fourteenth Amendment violations. (Doc. 1 ¶¶ 13, 66-84). Plaintiff's claims arise under federal law (42 U.S.C. § 1983 and the U.S. Const.), satisfying 28 U.S.C. § 1331. (Doc. 1 ¶¶ 13, 66-103).

Defendant further argues that the "state appellate process is an adequate remedy at law," but provides no evidence to support this assertion. For reasons shown in Section II.A.3 *supra*, the state's appellate process is clearly inadequate to protect Plaintiff from future harm caused by Defendant. *See also* (Doc. 1 ¶¶ 44-53).

Plaintiff's claims are neither vague nor conclusory, as they are supported by specific examples of Defendant's conduct and its impact on Plaintiff's constitutional rights. Defendant's Motion fails to demonstrate otherwise.

**D. Defendant's Argument Against Injunctive Relief Is Not Ripe**

Plaintiff's Complaint [Doc. 1] does not seek injunctive relief and, therefore, Defendant's argument against injunctive relief is not ripe for adjudication at this

time. *See generally* (Doc. 1). Plaintiff, however, does not waive his right to amend his Complaint to include injunctive relief if Plaintiff deems appropriate.

**E. The Complaint States a Plausible Claim Under 42 U.S.C. § 1983.**

Plaintiff's Complaint alleges plausible violations of his First and Fourteenth Amendment rights under 42 U.S.C. § 1983—which requires a deprivation of a constitutional right by a person acting under color of state law. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Here, Plaintiff properly pleads facts to support a claim for First Amendment retaliation as shown in [Doc. 1 ¶¶ 80-84], a claim for violation of due process rights as shown in [Doc. 1 ¶¶ 66-79], a claim for bad faith manufacturing of abstention defenses [Doc. 1 ¶¶ 85-94, and a claim for interference of access to remedies [Doc. 1 ¶¶ 95-103].

Additionally, the Complaint details Defendant's conflicts of interest, including his relationships with Judge Carl Bowers and his history of biased rulings and open court harassment of Plaintiff. (Doc. 1 ¶¶ 17-18, 25-26, 41, 70, 77). These allegations meet the *Caperton* standard of an "unconstitutional probability of bias," as they show a pattern of Defendant favoring his allies and retaliating against his adversaries, such as Plaintiff. (Doc. 1 ¶ 27); *Caperton* at 881. Finally, Defendant's continual interference with Plaintiff's advocacy, even despite

orders disqualifying him, violates both the Georgia Code of Judicial Conduct, Canon 2.11(A), and federal due process, entitling Plaintiff to declaratory relief.

In short, Plaintiff's Complaint plausibly alleges violations of Plaintiff's First and Fourteenth Amendment rights, and the requested relief is proper and necessary to protect Plaintiff's constitutional. *See also* Section II.A *supra*.

**F. Res Judicata Is Inapplicable.**

Defendant's attempted application of *res judicata* is misplaced. *See* (Doc. 9-1 at p. 21-22). First and foremost, *res judicata* does not bar allegations—only claims and issues. Second, Defendant bases his argument on three other cases, only two brought by Plaintiff (only one of which named Judge Brantley as Defendant) and both dismissed *without prejudice*. *See* (Doc. 9-1 at pg. 21-22); *McMaster v. Veal et al.*, Case No. 1:24-cv-03436-JPB; *McMaster v. Smith*, Case No. 1:25-cv-4077-JPB. While all parties agree that "[u]nder res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same cause of action," none of the cases filed by Plaintiff in this Court were ever decided on the merits. *Montana v. United* States, 440 U.S. 147, 153 (1979) (citing *Cromwell v. County of Sac.*, 94 U.S. 351, 352 (1877)). Thus, without further analysis, this Court must reject Defendant's *res judicate* defense.

**G. Judicial Immunity Does Not Bar Plaintiff's Claims.**

Judicial immunity does not bar claims for prospective declaratory and injunctive relief under § 1983 when a plaintiff seeks to remedy ongoing constitutional violations. *Pulliam v. Allen*, 466 U.S. 522, 536-37 (1984) (holding that judicial immunity does not bar claims for prospective declaratory and injunctive relief under § 1983 when a plaintiff seeks to remedy ongoing constitutional violations). Because Defendant has shown a continued pattern of abusing his role and authority as a judge to harass and financially harm Plaintiff and those similarly situated as Plaintiff, Plaintiff seeks prospective relief to prevent Defendant from parachuting (inserting) himself as a judge into Plaintiff's future cases to which Defendant was never assigned in the first place and, if Defendant does, Plaintiff has the remedy of withdrawal as counsel. (Doc. 1 ¶¶ 3); (Doc. 1 at p. 34-36(a)-(e)). *See Pulliam* at 541-42 (holding that judicial immunity does not bar injunctive relief under § 1983).

Defendant's reliance on *Stegeman v. Georgia*, 290 F. App'x 320, 323 (11th Cir. 2008), is misplaced, as *Stegeman* involved a personal injury claim against a judge that stemmed from the judge's rulings in a case, whereas Plaintiff's claims are for *prospective relief* only and Plaintiff alleges extrajudicial bias stemming from Defendant's personal and professional relationships, which are extrajudicial in nature. (Doc. 1 ¶¶ 21-22, 41, 70, 77); (Doc. 1-5 at pp 5-6); (Doc. 1-6 at pp. 4-5).

Defendant's reliance *Makere v. Early*, 2023 U.S. App. LEXIS 28750, at *9 (11th Cir. Oct. 30, 2023) is equally flawed. The Court in *Makere* stated in relevant part:

> Under § 1983, [declaratory and injunctive] relief is available only if the judicial officer violated a declaratory decree or declaratory relief is otherwise unavailable and there is an "absence of an adequate remedy at law." *See* 42 U.S.C. § 1983; ***Bolin***, 225 F.3d at 1242. (Citation omitted).

Here, declaratory relief is unavailable because, at least during the pendency of this suit thus far, Plaintiff is presently deprived by this Court of his ability to develop his claims with discovery, which is also unavailable through the appellate courts. Thus, declaratory relief presently stands unavailable and Plaintiff's Complaint is sufficient to, at minimum, move forward with a preliminary injunction prior to the outcome of this case. For reasons stated in Section II.A.3 *supra*, there exist no other adequate remedies by the state to protect Plaintiff's constitutional rights from being violated by Defendant under color of law.

Thus, any authority that *Stegeman* and *Makere* may provide are of no consequence to this case and Plaintiff is not barred, nor Defendant protected, by any alleged judicial immunity defense.

## III. CONCLUSION

For the foregoing reasons, this Court must **deny** Defendant's Motion to Dismiss [Doc. 9] in its entirety. Plaintiff has standing, states plausible claims under § 1983, and is entitled to declaratory (and/or injunctive) relief. Regardless, Plaintiff

intends to amend his Complaint [Doc. 1] in its entirety within the statutory period, which will render Defendant's Motion *moot*.

Submitted this 23rd day of March, 2026.

/s/____________________
Matthew D. McMaster
*Plaintiff, Pro se*
Ga. Bar No. 218044

12 Powder Springs St.
Suite 230
Marietta, GA 30064
(770) 362-6490 (cell)
(800) 890-3981 (office)
mdmcmaster@mcmasterlegal.com

## CERTIFICATE OF SERVICE

**I hereby certify that the foregoing submission was prepared using Times New Roman 14-point font in compliance with L. Rule 5.1(C)** and that I have caused a copy of the foregoing Response to be deposited in the United States Mail, postage prepaid, addressed to the Defendant's attorneys pursuant to Rule 5(b)(1) as follows:

**Keith Pridgen**
Georgia Department of Law
40 Capitol Square SW
Atlanta, GA 30334

**Melissa Tatum**
Office of the Cobb County Attorney
100 Cherokee Street, Suite 350
Marietta, Georgia 30090

Respectfully submitted this 23rd day of March 2026.

/s/

Matthew D. McMaster
*Plaintiff, Pro se*
GA Bar No. 218044

1095 New Haven Dr. SW
Marietta, GA 30064
(770) 362-6490 (cell)
(800) 890-3981 (office)
mdmcmaster@mcmasterlegal.com

12 Powder Springs St., Suite 230
Marietta, GA 30064
(800) 890-3981 (office)
(800) 890-3981 (fax)