IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta
MAR 30 2026
KEVIN P. WEIMER, Clerk
By: Deputy Clerk

| | | |
|---|---|---|
| MATTHEW D. MCMASTER, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. |
| | ) | |
| v. | ) | 1:25-CV-6726-JPB |
| | ) | |
| GEORGE G. BRANTLEY, and CHRISTOPHER HANSARD, | ) | |
| | ) | |
| Defendants. | ) | |

---

**AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

## I. INTRODUCTION

1. This action under 42 U.S.C. § 1983 seeks prospective declaratory and/or alternative injunctive relief to prevent ongoing and imminent violations of Plaintiff's constitutional rights arising from retaliatory misuse of state granted authority.

2. Plaintiff does not ask this Court to review, alter, or supervise any state-court adjudicative decision—nor to intervene in any pending state proceeding. Plaintiff seeks only constitutional declarations governing retaliatory administrative conduct.

3. **This is not a dispute about the administration of a single case.** It is a targeted pattern of pursuit by a state judicial officer (Judge Brantley) who has repeatedly attempted to exert jurisdiction over Plaintiff personally in retaliation for Plaintiff's protected speech, political candidacy, and exercise of right to petition against Defendants' interests. Absent federal relief, Defendants' conduct threatens ongoing constitutional injury to Plaintiff's advocacy, right to petition, right to free speech, right to attend a public forum, associations and active representation of clients.

4. A recent example of Defendants' interference with Plaintiff's rights occurred when Defendant Brantley—by and through the administrative authority of Christopher Hansard—inserted himself into one of Plaintiff's cases, *Murray v. Hill*, Cobb County Superior Court, Case No. 23104461, in defiance of multiple disqualification orders. On October 4, 2025, Plaintiff immediately filed his intent to withdraw from representation within 24 hours of Judge Brantley's assignment to the *Murray* case. On October 21, 2025, Plaintiff filed his motion to withdraw from representation of Robert Murray from that case. However, Judge Brantley refused to rule on Plaintiff's motion to withdraw, thus keeping Plaintiff hostage in the case. This is the **third time** in a span of two years that Judge Brantley has attempted to manufacture or assert improper jurisdiction over Plaintiff. There is no order that Plaintiff can appeal to protect his rights through any state appellate process.

Voluntary cessation by Defendants after Plaintiff files federal lawsuits is not an adequate remedy and cannot provide the prospective relief that Plaintiff needs from this Court for continual protection.

5. Plaintiff reserves the right to seek leave to supplement or amend this Complaint to identify additional actors and claims as further facts and discovery warrant.

## II. PARTIES

6. Plaintiff **Matthew D. McMaster** is a citizen of Cobb County, Georgia, an attorney in good standing.

7. Defendant **George G. Brantley** is an active Cobb County Superior Court Senior Judge. *See* (Doc. 1-1) (available at https://www.cobbcounty.gov/courts/superior-court/judges/senior-judges). Even when presiding in other counties as some state senior judges do, Judge Brantley uses Cobb County staff and resources. Defendant Brantley is sued solely in his official capacity for prospective relief. Defendant Brantley was a formerly named defendant in Case No. 1:24-CV-3436-JPB and that action was voluntarily dismissed without prejudice against him.

8. Defendant **Christopher Hansard** is the Administrator for Cobb County Superior Court. He is sued solely in his official capacity for prospective

declaratory relief addressing administrative functions in judge assignments and resource allocation.

9. Defendant Hansard is also the supervisor of Audrey Hastings who is a Senior Judge Administrator assisting Cobb County senior judges. Hastings assists Cobb County senior judges in matters before the Cobb County Superior Court and when they are presiding in other counties. Hastings does not assist non-Cobb County Superior Court judges who preside in other counties. Defendant Hansard is also the supervisor of Karli Smith—the named defendant in Case Nos. 1:25-CV-4077-JPB and Brett Conway who was a former defendant in 1:24-CV-3436-JPB.

## III. JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343, for prospective relief pursuant to 28 U.S.C. §§ 2201-2202 and under 42 U.S.C. § 1983, as this action seeks to protect rights secured by the United States Constitution. Plaintiff has standing for reasons shown below.

11. Venue is proper under 28 U.S.C. § 1391, as all parties reside in Cobb County and events giving rise to the claims occurred within Cobb County, which is within the jurisdiction of the Northern District of Georgia.

# IV. BACKGROUND

## A. Personal Hostility Toward Plaintiff as Counsel.

12. Between 2021 and 2024, Plaintiff publicly criticized judicial-assignment practices and biased recusal procedures within the Cobb County Superior Court. Plaintiff's criticisms were expressed in protected First Amendment activity including campaign speech, public statements, and the filing of judicial-recusal motions. *See e.g.*, (Doc. 1-2) (available at https://thewikilaw.org/wiki/index.php/The_Lion%27s_Den).

13. Following Plaintiff's protected activity in Fulton County Superior Court (i.e., multiple recusal motions and a petition for mandamus against the entire Fulton County Superior Court Bench), Defendant Brantley entered one of Plaintiff's cases, *Paramount Properties Management Group v. Derrick Jackson*, Case No. 2022CV365529, and made adverse rulings against Plaintiff's client inconsistent with both the facts and the law. Defendant Brantley then exhibited behavior toward Plaintiff suggesting personal hostility and retaliation, including irregular scheduling decisions, unnecessary comments from the bench directed personally at Plaintiff (and not anyone else), and rulings inconsistent with neutral practice norms.

14. Beginning on January 2, 2024, Defendant Brantley displayed hostility toward Plaintiff **regarding a recusal denial order that Plaintiff intended to raise**

**on appeal** entered by the previous Fulton County Superior Court judge presiding over the matter. Specifically, in *Paramount Properties v. Jackson,* Fulton County Superior Court, Case No. 2022CV365529, Judge Brantley made remarks directed at Plaintiff in open court such as, "You're playing games with me, Counsel. Listen to me. You know me. You know what I will do. Do you not? Is that door locked?" and "Don't dance with me." (Doc. 1-3). Judge Brantley then called a recess and warned Plaintiff to "be prepared to bring a toothbrush," implying potential overnight detention. *Id.* Judge Brantley did not show the same hostility to the opposing counsel.

15. On January 8, 2024, Judge Brantley stated in open court: "I am not happy with you. I told you just to brief the standing issue. You gave me the whole sink." (Doc. 1-4). Judge Brantley's comment in open court was without merit. Rather, Plaintiff merely attached his recently filed appellate brief to an argument brief required by Judge Brantley in the trial court for the purpose of ensuring that appellate jurisdiction was preserved despite Judge Brantley appearing to want Plaintiff to argue matters that were on appeal. *See* (Docs. 1-3 and 1-4). Plaintiff's argument brief required by Judge Brantley was not longer, and was arguably shorter, than the opposing party's brief ***but for*** Plaintiff's "exhibit" containing Plaintiff's recently filed appellate brief into the Georgia Court of Appeals, Appeal

No. A24A0624—that appeal is no longer pending. Judge Brantley did not show the same hostility toward the opposing counsel.

16. In March and April of 2024, Plaintiff filed multiple recusal motions against Judge Brantley in that Fulton County Superior Court case and all were denied by Judge Brantley ***without*** **re-assignment** under USCR 25.3. *See In re Murchison*, 349 U.S. 133, 136 (1955) ("No man can be a judge in his own case."). Those motions could not be appealed by Plaintiff because Plaintiff was forced (or *chilled* from representation) to withdraw from of his client in that action in August of 2024 due to additional hostile and retaliatory conduct by Judge Brantley. It was that same retaliatory conduct that caused Plaintiff to initiate Case No. 1:24-CV-3436-JPB on August 2, 2024.

### B. Plaintiff Engages in Protected Speech and Public Criticism of Cobb Judges.

17. Plaintiff, as a citizen and practicing attorney in Cobb County, has participated in lawful public advocacy concerning Cobb County judges and Cobb County senior judge assignment practices, including but not limited to:

(a) Challenging Cobb County Superior Court Judge, Robert D. Leonard II in the May 2022 election;

(b) Postings on Plaintiff's campaign website. *See e.g.* (Doc. 1-2) (https://thewikilaw.org/wiki/index.php/The_Lion%27s_Den); and

(c) Published online articles on thewikilaw.org. *See e.g.* (Doc. 1-5)

(https://thewikilaw.org/wiki/index.php/Fulton_Judiciary_Weaponizes_Project_ORCA).

**C. Plaintiff Ran Again for Judicial Office – May 2024.**

18. In May 2024, Plaintiff was a candidate for Cobb County State Court Judge, against the Honorable Carl Bowers, primarily because of Judge Bowers' personal relationship with Judge Brantley and their similar behaviors that Plaintiff believes evidence judicial impropriety. (Doc. 1-6).

19. Judge Brantley was aware of Plaintiff's campaign and public platform.

20. Judge Carl Bowers is a close family friend of and was the former law clerk for Judge Brantley.

21. Cobb County Superior Court, *Carl Bowers v. Ingrid Bowers*, Case No. 12108751, was assigned to Judge James Bodiford. However, Judge Brantley signed the final decree which excluded the marriage settlement agreement from the record entirely. Mike Bowers, the father of Carl Bowers, was Judge Brantley's superior officer in the military, Carl Bowers was a staff attorney for Judge Brantley, and Judge Brantley has remained a close intimate friend with the Bowers family.

22. In 2015, attorneys for Paulding County Industrial Building Authority filed a motion to recuse Judge Brantley from a lawsuit brought by local residents to prevent the development of the Silver Comet Field. The opposing party's attorney was Michael ("Mike") Bowers (father of Cobb County State Court Judge, Carl

Bowers), who was also Judge Brantley's former superior officer in the military and 30-year business and political associate. According to an article entitled Let Paulding Fly: Judge Brantley Needs To Step Aside:

> Judge Brantley and Mr. Bowers have a long and significant history that spans more than 30 years. Judge Brantley was Mr. Bowers' subordinate when he served as Mr. Bowers' lawyer as a staff judge advocate in the Air National Guard for 10 years, until 1992. During Mr. Bowers' 1994 re-election campaign for Georgia Attorney General, Judge Brantley served as his treasurer. When Mr. Bowers ran for Governor in 1998, Judge Brantley again served as treasurer and contributed $5,000 to the campaign. From 2001 to 2007, Judge Brantley was Of Counsel to Mr. Bowers' law firm – a business relationship that involved the firm paying for all of Judge Brantley's overhead and a 50/50 split of all his fees. In 2004, Judge Brantley ran for a seat on the Georgia Supreme Court and received almost $20,000 in campaign contributions from Bowers himself and Bowers' law firm and family members. In 2009, when Judge Brantley sued to collect legal fees owed him, his attorney was Mr. Bowers, the case went on until 2012. In addition, this week it was revealed that Mr. Bowers' son was Judge Brantley's former law clerk. (Doc. 1-6).

23. Judge Brantley refused to recuse himself from that case. Eventually, while Judge Brantley's denial of the request to recuse was on appeal, Mike Bowers was replaced by a different attorney in the case and the appeal was dismissed as *moot*.

### D. Post-Election Retaliation and July 2024 Phone-Seizure Incident.

24. Prior to the May 2024 election, Judge Brantley permitted Plaintiff to record judicial proceedings, including in *Lowe v. Lowe*, Cobb County Superior Court, Case Nos. 23105442 and 20106072. (Doc. 1-6). Plaintiff requested to record

those hearings pursuant to USCR 22 **at the request of Laura Lowe, the mother-litigant in *Lowe v. Lowe*.**

25. At a July 2024 hearing in *Lowe v. Lowe*—which was after the May 2024 election—Judge Brantley abruptly reversed his recording allowance, denied Plaintiff's next recording request in *Lowe v. Lowe*, and signed an order (**drafted by Attorney Leonard**, who was an attorney of record in *Lowe v. Lowe* and also the spouse of Cobb County Superior Court Judge Robert D. Leonard II) that stated Plaintiff's requests to record those hearings pursuant to USCR 22 were "harassing." (Doc. 1-8 ¶ 1(i)). Katie Leonard then took Judge Brantley's rubber-stamped order (that she drafted) as justification to go on social media and personally attack Plaintiff. (Doc. 1-9). It should be noted that while she never states Plaintiff's name in the TikTok videos, Mrs. Leonard does flash a court document that displays Plaintiff's name to be sure that her viewers saw it. Mrs. Leonard removed the videos from TikTok some months after the complaint against her (among other state actors) was filed in Case No. 1:24-CV-3436-JPB. Plaintiff later voluntarily dismissed that action against Mrs. Leonard without prejudice.

26. At the June 2024 *Lowe v. Lowe* hearing regarding Plaintiff's request to record, when Attorney Leonard made argument that Plaintiff wished to rebut, Plaintiff asked Judge Brantley if Plaintiff may speak and Judge Brantley inquired: "About what?" (Doc. 1-10). As Plaintiff began to answer, Judge Brantley cut him

off stating, "No. Have a seat sir. You've used enough of this proceedings' time." *Id.* Judge Brantley then proceeded to call the "Deputy" to induce Plaintiff to seat promptly. *Id.* Plaintiff did in fact seat himself promptly. *Id.*

27. Also at the June 2024 hearing in *Lowe v. Lowe*, at the request of Attorney Leonard, Judge Brantley ordered court law enforcement to inspect Plaintiff's phone to ensure he was not recording. (Doc. 1-10). Concerned he may never see his cell phone again, Plaintiff opted to vacate the courtroom for the remainder of the "public" proceeding. *Id.*

28. After the June 2024 *Lowe v. Lowe* hearing, Katie Leonard and Brett Conway (assisting Judge Brantley) continued to email Plaintiff and enter court orders trying to induce Plaintiff to come to court for another *Lowe v. Lowe* hearing—though Plaintiff was neither a party nor an attorney of record in that case—to make argument against paying Katie Leonard's attorney fees for Plaintiff requesting to record the June hearing. (Doc. 1-11). It was those continual attempts to induce Plaintiff to appear before Judge Brantley to argue against Leonard's fees that prompted Plaintiff to immediately initiate Case No. 1:24-CV-3436-JPB against the Judicial Qualifications Commission ("JQC") Director, several Cobb County judges and an administrative staff member—which included Cobb County Senior Judge Brantley and senior staff attorney Brett Conway.

29. This federal lawsuit does not "providentially hinder" Judge Brantley or Hansard from carrying out their lawful duties. Shortly after initiating Case No. 1:24-CV-3436-JPB, Plaintiff moved to withdraw from representation of Derrick Jackson from the *Paramount Properties v. Jackson* case pending in Fulton County Superior Court in which Judge Brantley was presiding, a motion which Judge Brantley promptly **granted** also in August 2024. Plaintiff is no longer an attorney of record in the *Paramount Properties v. Jackson*, Fulton County Superior Court, Case No. 2022CV365529.

### E. Disqualification Orders and Administrative Re-Involvement.

30. Plaintiff regularly practices in Cobb County Superior Court. Defendant Judge George G. Brantley is in a class of individuals that have been repeatedly declared disqualified from a matter involving Plaintiff and his (former) client Robert Murray, yet Defendant Brantley, with assistance of Defendant Hansard and his staff, recently resumed jurisdiction and administrative control over such matters despite those disqualification orders.

31. Cobb County Superior Court administrative staff members Brett Conway and Audrey Hastings, acting in an administrative capacity under the supervision of Defendant Christopher Hansard and under authority by delegation from Defendant Brantley, have participated in and facilitated administrative actions affecting Plaintiff's protected advocacy and associations under the same retaliatory agenda

as Judge Brantley. Defendant Hansard—Cobb County Superior Court Administrator—facilitated Judge Brantley's reassignment to Plaintiff's case knowing of Judge Brantley's disqualifications and agenda against Plaintiff.

32. Due to transactions, events and occurrences and the material facts to Case No. 1:24-CV-3436, of which Judge Brantley and Brett Conway were primary catalysts, pro se party Robert Murray in Cobb County Superior Court case *Murray v. Hill et al.* filed a *Motion for Recusal of the Entire Bench of Cobb County Superior Court* on June 25, 2024, which triggered a chain reaction of recusal orders to be entered in *Murray v. Hill et al.*—at that time Plaintiff was neither an attorney nor a party to that action. (Doc. 1-12). Between August 3, 2024 and October 1, 2025, multiple Superior Court judges declared all Cobb County Superior Court judges disqualified from presiding over *Murray v. Hill* for various reasons. (Docs. 1-12 and 1-13).

**Policy Allowing Disqualified "Judge Shopping"**

33. It is common practice for certain Cobb County judges to use senior judges (e.g., Judge Brantley) as henchmen or goons to carry out retaliatory agendas against certain lawyers and litigants or to otherwise enter bias rulings in favor of the judges' friends, cronies or quid pro quo relationships—which circumvents the Uniform Superior Court Rule 25 procedures for recusal and random reassignment. *See e.g.* (¶¶ 20-23 *supra*).

34. **Pre-2025 Cobb County Policy.** The former policy for hand-picking senior judges to carry out an agenda was as follows: (1) the presiding judge who should recuse themselves would directly ask a senior judge to preside over his or her case that the presiding judge was disqualified from; and (2) the senior judge would accept the assignment by agreement—this was all instead of recusing pursuant to USCR 25. When an entire bench recused or was disqualified, the policy was for the disqualified chief of superior court to make a direct request (or "shop") for their judge of choice to the 7th District Administrator and provide the 7D Admin Judge; and the 7D Admin would provide the disqualified court with the judge of their choice without random assignment. There is no state mechanism to refute or fight this process even though it is not allowed under Georgia law.

35. **New Cobb County Policy Involving Christopher Hansard.** On September 12, 2025, the policy for "judge shopping" a senior judge described in ¶¶ 33-34 above changed by inserting Christopher Hansard, the Cobb County Court Administrator into the judge selection procedure for the purpose of leveraging *Monell* and Home Rule perceived protections. This new policy was recently displayed when Cobb County Chief Superior Court Judge Ann B. Harris, who voluntarily recused herself **twice** in the *Murray* case and was declared in a disqualified class at least **three times** as a member of Cobb County Superior Court judges. Specifically, Judge Harris entered an order requiring the Cobb County

Administrator, Christopher Hansard, to submit a request to the 7th District Administrator for a senior judge instead of the disqualified judge as described in ¶ 34 above. (Doc. 1-13).

36. Concerned that the 7th District Administrative Judge would not be aware of the unprecedented amount of recusals of Cobb County judges on the *Murray v. Hill* record—some which included disqualification of the entire Cobb County bench—on September 19, 2025, Plaintiff filed a motion to recuse the entire 7th Administrative District from the *Murray v. Hill et al.* case. While the 7th District Admin Judge denied Plaintiff's motion to recuse the entire 7th Administrative District on September 23, 2025, his order confirms the record reflected that **all Cobb County judges were disqualified**. (Doc. 1-14) ("[T]he undersigned judge finds and concludes that neither his recusal nor the recusal of the judges of the 7th Judicial Administrative District, **other than the active Cobb judges**, is warranted . . . And the record fails to reflect any impropriety or even the appearance of any impropriety by any judge of the 7th Judicial Administrative District, **other than the Cobb judges, all of whom voluntarily recused**.") (Emphasis added); *see also* (Doc. 1-12) (containing Chief Superior Court Judge Alan G. Poole's December 4, 2024 order of recusal ordering that: "As the motion to recuse the entire Superior Court of Cobb County bench remains pending, the undersigned as the Chief Judge of the Cobb Judicial Circuit hereby and pursuant to

Judicial Cannon 2.11 issue a **VOLUNTARY AND IMMEDIATE RECUSAL of** all Cobb County Superior Court Judges and former Cobb County Superior Court Judges who now preside as senior judges of the State of Georgia. **IT IS HEREBY ORDERED** that **all such judges are RECUSED from any further proceedings in this case**.")(Emphasis added); (Doc. 1-13) (containing Chief Superior Court Judge Ann B. Harris's voluntary recusal order ("Pursuant to Uniform Superior Court Rule 25.7 and Rule 2.11 of the Code of Judicial Conduct, the Court *sua* sponte, hereby voluntarily recuses from the above-styled matter."); Judge Jason Marbutt's order of voluntary recusal ("If ever there was a case where a full bench recusal seems appropriate, it would seem this is the case.")).

37. Despite the September 23, 2025 order confirming that the evidence showed all Cobb County Superior Court judges were (or should be) disqualified from *Murray v. Hill*, and regardless of the fact that Judge Brantley was the catalyst for the filing of Case No. 1:24-CV-3436-JPB and the initial motion to recuse the entire Cobb County Superior Court bench, the 7th District Admin Judge followed Christopher Hansard's direct request and entered an order on October 3, 2025, assigning Judge G. Grant Brantley to the *Murray v. Hill* case by an *ex parte* "agreement" made with Judge Brantley. (Docs. 1-12 and 1-13); (Doc. 1-15) ("The Honorable G. Grant Brantley, Senior Judge, Superior Court, State of Georgia, has **agreed** to assist the court in said assignment.") (Emphasis added).

38. In less than 24-hours, on October 4, 2025, Plaintiff filed his intent to withdraw from representation of Robert Murray, the named Plaintiff in *Murray v. Hill et al*.

**F. Refusal to Rule in Bad Faith.**

39. On October 21, 2025, Plaintiff filed a Rule 4.3 Motion to Withdraw from representation of Robert Murray in *Murray v. Hill*.

40. Judge Brantley refused to rule on the motion while simultaneously scheduling a mandatory appearance hearing for all parties on November 12, 2025. Judge Brantley subsequently cancelled that hearing on November 10, 2025 after the plaintiff (Rober Murray) initiated a federal lawsuit against Judge Brantley and other state actors.

41. This intentional interference with Plaintiff's case and refusal to rule had the sole effect of keeping Plaintiff under Judge Brantley's authority (a) so that Defendants may argue *Younger* abstention for "ongoing state proceeding" and/or (b) to retaliate against Plaintiff as Judge Grubbs did 2023. Refusal to rule on an unopposed withdrawal motion for the sole purpose of retaining jurisdiction is an **administrative act**, not an adjudicative judicial act. As to Plaintiff, the only practical effects of not ruling on Plaintiff's motion to withdraw as counsel—a motion that had not been objected to by either Robert Murray (Plaintiff's client) or

the opposing counsel—was to perpetuate jurisdiction over Plaintiff personally for retaliatory purposes. It served no **legitimate** adjudicative purpose as to Plaintiff.

## V. STANDING

42. Plaintiff has Article III standing under *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

43. Plaintiff has standing based on (a) harassment and threat of retaliatory sanctions by Defendant Brantley; (b) Defendants' abuse of administrative loopholes to selectively appoint Judge Brantley to Plaintiff's cases to carry out retaliatory harassment and sanctions; (c) the imposition of a coercive Hobson's choice between enduring retaliation and withdrawing as counsel; (d) destruction of existing attorney-client relationships; and (d) ongoing *chilling* of Plaintiff's professional advocacy. These injuries are concrete, ongoing and personal to Plaintiff.

44. This Court can redress Plaintiff's injuries with prospective relief by (1) enjoining Defendant Brantley from intervening with Plaintiff's cases; (2) declare that Defendant Brantley's assignment to Plaintiff's cases is violative of Plaintiff's constitutional rights; (3) enjoining Defendants from using their administrative influence, power and authority to insert Defendant Brantley into Plaintiff's cases; and/or (4) declaring that Plaintiff has a constitutional right to immediately

withdraw from representation from a client should Defendant Brantley be assigned to preside over one of Plaintiff's civil cases.

45. Both Defendants use their continuing authority within the same integrated administrative structure that routinely permits or directs the challenged conduct, functionally **weaponizing** the judicial system against Plaintiff, knowing that Plaintiff's law practice is his livelihood and that Plaintiff will continue to appear in Superior Courts across the state and in Cobb County specifically.

**A. Standing Based on Injuries to Plaintiff.**

46. Plaintiff has standing to seek prospective relief because Defendant Hansard uses his administrative authority and Judge Brantley uses his senior-judge authority to structurally disable Plaintiff's law practice in retaliation for Plaintiff's First Amendment activity, by repeatedly forcing Plaintiff to either (a) endure harassment and sanctions by Brantley or (b) withdraw from representation of his clients. This is **personal, economic, professional, and First Amendment injury to Plaintiff**—with client harm pled only as mechanism and consequence, not as a standalone basis for standing.

**1. Repeated Hobson's Choice Imposed on Plaintiff.**

47. Defendant Brantley has imposed an unconstitutional dilemma on Plaintiff in retaliation for Plaintiff's protected speech and advocacy.

48. When Defendant Brantley inserts himself into Plaintiff's cases as a senior judge, Plaintiff is confronted with only two options: (a) remain in the case and endure harassment, hostile treatment, and the threat of retaliatory sanctions; or (b) withdraw as counsel to protect himself from retaliation.

49. Defendants, as "state actors," may not condition Plaintiff's exercise of his profession or the continuation of lawful representation on submission to retaliatory punishment. This coercive choice constitutes a present, concrete injury to Plaintiff personally.

**2. Destruction of Attorney Client Relationships.**

50. Defendant Brantley's conduct has already forced Plaintiff to withdraw from two previous active representations.

51. Each forced withdrawal terminates an existing attorney-client relationship, deprives Plaintiff of ongoing legal work, and causes direct economic and professional harm.

52. This injury is complete, concrete, and particularized. It does not depend on speculation about future events or on the outcome of any state-court proceeding.

**3. Ongoing *Chilling* and Interference with Plaintiff's Law Practice.**

53. Defendant Brantley's continued availability to interfere as a senior judge creates a persistent *chilling* effect on Plaintiff's exercise of rights to associate, advocacy, and right to petition to record under USCR 22.

54. Plaintiff cannot assure current or prospective clients that representation will be free from retaliatory judicial interference from Brantley or that requests to record under USCR 22 will not be met with retaliation. As a result, Plaintiff is deterred from continuing representations and engaging in protected advocacy and speech.

55. This ongoing deterrence constitutes an independent injury distinct from any single case or withdrawal.

**B. Supplemental Third-Party Standing Based on Retaliation Against Plaintiff's Clients and Associates.**

56. In addition to his own injuries, Plaintiff has standing to assert claims on behalf of his clients and others associated with him whose rights are violated as a direct result of Defendant Brantley's retaliatory conduct.

57. Plaintiff satisfies the requirements for third-party standing: (1) Plaintiff has suffered an injury-in-fact to his own constitutional rights, including forced withdrawal from representation, economic harm, and *chilling* of protected advocacy, as set forth above; (2) Plaintiff maintains a close relationship with the affected third parties—Plaintiff's clients (e.g., Derrick Jackson and Robert Murray) and associates (e.g., Laura Lowe, Tameka Brown and Mary Murray) are targeted precisely because of their decision to retain or associate with Plaintiff as counsel, advocate or candidate, and the attorney-client relationships and political

associations at issue here are direct, ongoing, and central to the exercise of First Amendment rights; (3) Plaintiff's clients and associates face substantial hindrances to asserting their own rights—retaliation is inflicted indirectly through judicial hostility, procedural disadvantage, and the threat of sanctions when they are represented by Plaintiff, and the affected individuals are compelled to proceed without counsel because other attorneys do not want to be retaliated against and/or the individuals are deterred from objecting due to fear of escalating retaliation.

58. The retaliatory conduct challenged here is designed to deter association with Plaintiff and to insulate itself from review by imposing costs on those least able to challenge it. Under these circumstances, third-party standing is appropriate.

59. Plaintiff asserts third-party standing only to the extent necessary to obtain prospective relief preventing Defendant Brantley from retaliating against individuals based on their association with Plaintiff.

**C. No Adequate State Remedy**

60. **The state system is the weapon being used by Defendants against Plaintiff.** While typical common forms of retaliation used by a lay person (not a state actor) may include, slashing tires, defamatory remarks online or in the media, toilet-papering ones house, theft of personal property or other forms of vandalism or even assaults and batteries, Defendants use the state judicial system to attack Plaintiff because that allows them to harm Plaintiff believing they are immune

from any state or federal judicial remedy. Plaintiff is uniquely situated as an attorney who will continue to appear in Superior Courts in Cobb County and throughout the state to further his livelihood.

61. There is no order that Plaintiff can appeal to protect his rights through any state appellate process. That right belongs to the litigants/clients from which Plaintiff is forced to withdraw representation of. Being forced to invoke an appellate process (if one was even available) would in fact further the harm caused by the constitutional violation, as it would only show that Plaintiff was denied due process in the first instance.

62. Recusal of Judge Brantley would be remedy of the litigant/Plaintiff's client, not for Plaintiff. Further, recusal processes are *de facto* non-functional, as disqualification of Cobb County judges, which include Judge Brantley, was already declared on the record (at least) three times in *Murray v. Hill*, and simply went ignored.

63. Plaintiff, an attorney practicing primarily in Cobb County, has no adequate state remedy due to government immunity protections, futile recusal and appellate processes, and the lack of mechanisms to address bias by court staff. Plaintiff has filed multiple motions to recuse in state court, all meritorious yet all denied, confirming the inadequacy of state remedies. No cases exist from at least the last twenty-five (25) years where a Cobb County Superior Court judge was

recused by another judge upon a Uniform Superior Court Rule 25.3 re-assignment, nor where the Georgia Court of Appeals reversed or vacated such a denial.

64. In prior appellate proceedings before the Georgia Court of Appeals and the Supreme Court of Georgia, Plaintiff expressly informed those tribunals—through a motion for reconsideration brief and petitions for certiorari briefs filed in matters arising from Fulton County Superior Court cases—that the appellate courts' continued refusal to review or correct improper rulings resulting from retaliatory motives would be prima facie evidence of the inadequacy of state judicial remedies. Plaintiff stated that, if such refusals persisted, he would be compelled to seek prospective relief under 42 U.S.C. § 1983 in federal court. *See* (Doc. 1-16) ("This case is the result of blatant retaliation and establishes a prima facie case for prospective relief under 42 U.S.C. § 1983 by the United States district courts and the Eleventh Circuit. 42 U.S.C. § 1983 is 'not only an expression of the importance of protecting federal rights from infringement by the states but also, where necessary, the desire to place the national government between the state and its citizens.'")(citing *Younger v. Harris*, 401 U.S. 37, 63 (1971); (1-17) (Plaintiff conveys to the Georgia Supreme Court that the questions presented in his petition for writ of certiorari "come before this Court as symptoms of much bigger issues. More directly put, what happened in the trial court and was affirmed by the Georgia Court of Appeals in this case is the result of blatant

retaliation which, **but for relief from this Court**, establishes a prima facie case for prospective relief under 42 U.S.C. § 1983 by the United States federal district courts from the rath of certain lower court judges.").

65. Despite that notice, both the Georgia Supreme Court and Georgia Court of Appeals declined reconsideration and review without opinion, leaving intact orders entered by judges with retaliatory motives (Judge Melynee Leftridge, Judge Emily Richardson, Judge Adele Grubbs and Judge G. Grant Brantley), thereby confirming the systemic inability of the state judiciary to provide a neutral forum for Plaintiff and Plaintiff's clients. Plaintiff is not asking this Court to review those matters in any appellate capacity, but only to consider them as evidence of the inadequacy of state proceedings. Plaintiff had exhausted all state remedies (to no avail) from a $116,000 sanction by Cobb County Senior Judge Adele Grubbs with reasoning that violates the federal Bankruptcy code and was imposed on Plaintiff months after Plaintiff had filed multiple recusal motions against Judge Grubbs in *Jackson v. McCracken et al.* in Fulton County Superior Court.

66. This sequence demonstrates (a) that further state-court petitions would be futile and put Plaintiff at risk of retaliatory conduct including but not limited to bogus (functionally non-reviewable) sanctions, and (b) that federal jurisdiction is proper to address ongoing constitutional violations. *See Gibson v. Berryhill*, 411

U.S. 564, 577-578 (1973) (*Younger* abstention inapplicable where the state process is structurally biased or incapable of neutral adjudication. "It is appropriate, therefore, that we consider the District Court's conclusions that the State Board of Optometry was so biased by prejudgment and pecuniary interest that it could not constitutionally conduct hearings looking toward the revocation of appellees' licenses to practice optometry. We affirm the District Court in this respect."); *Luckey v. Harris*, 860 F.2d 1012, 1017-1018 (11th Cir. 1988) (prospective relief available where systemic practices threaten continuing constitutional harm).

67. This Court can take judicial notice that there are no cases within at least the last 25 years where the Georgia Court of Appeals reversed or vacated the non-recusal of a trial judge after a recusal motion was re-assigned for a hearing pursuant to Rule 25.3 and then denied by another trial judge. Cobb County Superior Court judges are aware of this loophole for not having recusal denials reversed or vacated by the Georgia Court of Appeals.

68. Plaintiff's experience further confirms the futility of seeking protection through ordinary state-court channels. In every instance where Defendant Brantley has asserted jurisdiction despite clear bias against Plaintiff, Plaintiff's only means of mitigating the risk of constitutional injury against Plaintiff has been to file a Motion to Withdraw from representation, thereby removing himself from the case and abandoning his client's active representation—which is also an injury to

Plaintiff's right to associate. Withdrawing from cases, while it has been effective to end immediate coercion, imposes a direct burden on Plaintiff's professional and expressive rights and cannot be considered an "adequate remedy" within the meaning of *Younger v. Harris*, 401 U.S. 37 (1971). Alternatively, with permission of his client, Plaintiff could voluntarily dismiss the state court cases and advise his client to find another attorney which, again, renders a *de facto* constitutional injury (e.g., violation of right to associate and right to work).

69. The only other measure that has deterred repetition of the challenged conduct has been the filing of federal civil-rights actions under 42 U.S.C. § 1983 naming Defendant Brantley and related court administrators—triggering voluntary cessation. Plaintiff should not have to do that—but Plaintiff does in fact have to do that.

70. The necessity of resorting to federal litigation is itself evidence that the state system is structurally incapable of self-correction. These realities underscore that abstention is improper and that prospective relief is the only effective means of preventing further constitutional violations.

**Manufactured Abstention Shield**

71. Again, **<u>the state proceeding is the weapon, not the forum</u>**. Defendant Brantley's sudden self-assignment to *Murray v. Hill* after prior disqualifications of

all Cobb County judges constitutes a deliberate attempt to fabricate an "ongoing state proceeding" for use as an abstention shield in this and related § 1983 actions.

72. Because this proceeding **with Judge Brantley presiding** exists solely by the Defendants' creation (Judge Brantley would not be presiding otherwise), it cannot be a legitimate basis for abstention. Defendants cannot manufacture a parallel state jurisdiction to defeat federal jurisdiction. *See Wilson v. Thompson*, 593 F.2d 1375, 1383 (5th Cir. 1979) (former 5th Cir. Pre-1981; binding in 11th Cir.) ("When a significant chilling effect on free speech is created by a bad faith prosecution, the prosecution will thus as a matter of law cause irreparable injury regardless of its outcome, and the federal courts cannot abstain from issuing an injunction.") (quoting *Sheridan v. Garrison*, 415 F.2d 699, 706 (5th Cir. 1969)).

73. Abstention doctrines do not apply because Defendants are acting in bad faith and with retaliatory motive to prevent Plaintiff from obtaining federal protection of his constitutional rights. *Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975) (defines "bad faith" as no reasonable expectation of conviction). Judge Brantley had no reasonable expectation of finding a legitimate reason to cause Plaintiff to be at the November 12, 2025, hearing (and then canceling without ruling on Plaintiff's motion to withdraw) but for retaliation against Plaintiff and manufactured abstentions.

74. Defendant Brantley's intentional interference with Plaintiff's case, Cobb County Superior Court, Case No. 23104461—despite orders declaring he is in a disqualified class—serves no legitimate judicial purpose and was intended to manufacture a pretextual "ongoing proceeding" to obstruct federal jurisdiction. *See Wilson v. Thompson*, 593 F.2d 1375, 1383 ("With respect to the interests of the State, it by definition does not have any legitimate interest in pursuing a bad faith prosecution brought to retaliate for or to deter the exercise of constitutionally protected rights.").

75. Plaintiff has no adequate remedy within the state system to protect his own constitutional rights as counsel, advocate, and associate.

**D. Redressability**

76. The relief sought is necessary to prevent retaliation and to restore Plaintiff's *chilled* rights to associate, to advocacy and to act in his profession.

77. Plaintiff's injuries are fairly traceable to misuse of Defendant Brantley's senior-judge authority and Defendant Hansards administrative authority, and are redressable through prospective declaratory relief.

78. A declaration that Defendant Brantley's exercise of authority in matters involving Plaintiff are unconstitutional would eliminate the coercive choice and retaliatory conditions that force withdrawals and would alleviate the *chilling* effect on Plaintiff's law practice, advocacy and First Amendment activity.

79. A declaration that Defendant Hansard's perceived "accountability void" does not prevent him from being considered a "state actor" and does not allow *Monell* or Georgia's home-rule to protect him from prospective relief under 42 U.S.C. § 1983 would deter Christopher Hansard's unconstitutional conduct and Hansard's (and his staff's) participation in Judge Brantley's unconstitutional agenda and conduct.

## VI. LEGAL STANDARDS

80. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) the deprivation of a right secured by the Constitution and (2) that the deprivation was committed by a person acting under color of state law. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

81. Declaratory relief is authorized by 28 U.S.C. § 2201, and injunctive relief is appropriate where ongoing constitutional violations cause irreparable harm. *Elrod v. Burns*, 427 U.S. 347 (1976).

82. Under *Ex parte Young* and Eleventh Circuit precedents such as *Luckey v. Harris*, 860 F.2d 1012 (11th Cir. 1988), prospective official-capacity claims for injunctive or declaratory relief are not barred by sovereign immunity. *See also Forrester v. White*, 484 U.S. 219 (1988) (administrative acts are not barred by judicial immunity). Claims are prospective and do not seek review of any state judgment, avoiding Rooker-Feldman.

83. The Fourteenth Amendment guarantees a fair and impartial tribunal. *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 129 S.Ct. 2252 (2009). Recusal of a judge is required when based on the facts and circumstances, "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Caperton* at 129 S.Ct. at 2257 (quoting *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712).

84. The First Amendment protects the right to petition the government without retaliation. *See, e.g., Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005); *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1289 (11th Cir. 2019).

85. Relief sought is self-executing, forward-looking only and will operate solely through state-court procedures without federal oversight of any state proceeding or judicial function. *O'Shea v. Littleton*, 414 U.S. 488 (1974), therefore does not bar federal jurisdiction.

## VII. <u>CLAIMS FOR RELIEF</u>

**<u>COUNT I</u>: Violation of Fourteenth Amendment**

86. Plaintiff realleges the facts set forth in ¶¶ 1–85.

87. The Due Process Clause prohibits adjudication by judges with personal animus or a probability of bias toward a litigant or attorney. Recusal of a judge is required when based on the facts and circumstances, "the probability of actual bias

on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Caperton* at 129 S.Ct. at 2257.

**Extreme Facts**

88. Defendants' continued future adjudication and control of cases involving Plaintiff poses a substantial and constitutionally intolerable risk of bias as demonstrated by Defendant Brantley's open-court threats, refusal to follow recusal procedures, post-recusal jurisdictional assertions, and refusal to rule on Plaintiff's motion to withdraw. *See Caperton* at 129 S.Ct. at 2257.

89. Defendants' have a custom and policy promoting non-random reassignment upon disqualification of Cobb County judges.

90. Defendant Brantley has shown a history of hostility toward Plaintiff, as evidenced by Judge Brantley's open court comments toward Plaintiff in *Paramount Properties v. Jackson*, Judge Brantley's post-election phone seizure threat and refusal to allow Plaintiff to record in *Lowe v. Lowe*, and his multiple attempts to assert jurisdiction over Plaintiff in both *Lowe* and *Jackson* and the recent instance in *Murray v. Hill*.

91. In *Jackson*, the Court of Appeals had jurisdiction over all pending matters yet Judge Brantley continued to try and order Plaintiff to appear. In *Lowe*, Plaintiff was not even a party nor an attorney of record in the case yet Conway continued to attempt to induce Plaintiff to appear before Brantley. In the latest

*Murray v. Hill* case where Plaintiff was an attorney of record, all Cobb County judges were recused and declared multiple times to be disqualified, yet Judge Brantley entered the case by agreement made with the assigning judge.

92. Multiple written orders entered by Cobb County Superior Court judges in *Murray v. Hill* expressly disqualified the entire Cobb County Superior Court bench from adjudicating matters in that case due to concerns regarding the appearance of judicial impropriety. (Docs 1-12—1-15).

93. Despite those disqualification orders, Judge Brantley continued to assert personal jurisdiction over Plaintiff through a refusal to adjudicate Plaintiff's Motion to Withdraw in *Murray v. Hill*—a case to which Judge Brantley was not assigned but, rather, **entered into by his own volition** after an array of Cobb County **recusals that Judge Brantley caused in the first place**. Because Judge Brantley merely refuses to order Plaintiff's withdrawal from that case, an appeal in the state proceeding is not available to Plaintiff.

**Standing**

94. Compelling Plaintiff to appear before a judicial officer in a case in which that judicial officer was already found to be disqualified creates an objectively intolerable risk of bias, where multiple written orders disqualified the entire Cobb County bench and Defendant Brantley thereafter asserted jurisdiction by agreement and administrative refusal to rule.

95. If Plaintiff is forced to appear before Defendant Brantley, the constitutional injury will be complete and irreparable at that moment, because the purpose of Plaintiff's compelled appearance is to subject Plaintiff once again to the coercive authority of an adjudicator previously adjudged disqualified.

96. Plaintiff has no adequate state remedy to prevent this harm, because he is not a party to the underlying state case and there is no order to appeal—merely a refusal to rule. Plaintiff therefore cannot appeal the constitutional violation as to himself. Only this Court can prevent the violation before it occurs.

97. Defendant Brantley's history of refusing recusal in cases raising concerns of bias extends well beyond Cobb County. Court records reflect that recusal motions have been filed against him in multiple Georgia counties, including Paulding, Spalding, Douglas, Fulton, and Forsyth, arising from allegations of partiality, improper tone, or personal animus in his conduct on the bench. In each instance, Defendant Brantley refused to recuse, and the Georgia Court of Appeals affirmed or declined to disturb those refusals. *See Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 881 (2009) (risk of bias exists where the system fails to provide a neutral forum); *In re Murchison*, 349 U.S. 133, 136 (1955) ("No man can be a judge in his own case.").

98. This history further supports Plaintiff's allegation that no adequate state remedy exists to protect his Fourteenth Amendment right to a fair and

impartial tribunal. When every prior recusal motion involving Defendant Brantley has failed, despite recurring allegations of bias, the appellate process itself becomes part of the harm. The futility of obtaining state-court relief thus heightens the necessity for federal declaratory protection. *See Luckey v. Harris*, 860 F.2d 1012, 1018 (11th Cir. 1988) (prospective relief appropriate where systemic practices threaten ongoing constitutional violations).

99. A prospective declaration is necessary to prevent future violations of Plaintiff's Fourteenth Amendment rights.

**COUNT II: First Amendment Retaliation**

100. Plaintiff realleges the facts set forth in ¶¶ 1–99.

101. Plaintiff's protected criticism of judicial practices precipitated retaliatory conduct by Defendants, including public remarks, atypical rulings, and personal hostility.

102. Defendants (and their staff at Defendants' direction, policy and/or ratification) have retaliated against Plaintiff, Plaintiff's associates, Plaintiff's friends, and Plaintiff's clients for his protected speech (campaign website, media comments, judicial candidacy) and federal litigation by reversing recording permissions, threatening phone seizure, assigning Defendant Brantley to Plaintiff's case in defiance of disqualification orders, and refusing to rule on Plaintiff's unopposed motion to withdraw.

103. One week after the initiation of Case No. 1:25-CV-4077 against Calendar Coordinator Karli Smith, the Attorney General's office (who represented Judge Brantley and presently represents Judge Alan G. Poole in Case No. 1:24-CV-3436) indicted Cobb County Superior Court Clerk, Connie Taylor, before a senior judge for violation of her oath of office and destruction of public records—issues before this Court against Judge Poole and his staff, Karli Smith, in cases 1:25-CV-4077 and 1:24-CV-3436. At that hearing, the court allowed without scrutiny Noble Hunter Riggall of the Marietta Daily Journal, Taylor Groft of the Atlanta Journal Constitution and Lacey Lee of WSB-TV all to record the indictment hearing under Uniform Superior Court Rule 22. However, when Mary Murray, Robert Murray's mother, of Equally Present, LLC requested to record the scheduled November 12, 2025 hearing in *Murray v. Hill*, Mr. Conway (by email and with no apparent authority) demanded that Mrs. Murray "provide some authority that permits a board member to represent the interests of an LLC in a legal proceeding, or that the request submitted is not included in the general prohibition against pro se representation of a business entity." (Doc. 1-19). Mr. Conway did not put these same requirements on (non-attorneys) Noble Hunter Riggall, Taylor Groft, Lacey Lee, or any other individual who has requested to record Superior Court hearings in history—and if he did it was certainly selective and discriminatory as with Mrs. Murray here. *See* (Doc. 1-19).

104. Future participation by Defendants in Plaintiff's matters threatens continued retaliation and amplifies the *chilling* of Plaintiff's advocacy of and rights to associate with his clients as their attorney, given Defendants' established pattern of administrative reassignment, selective enforcement, and jurisdictional manipulation following Plaintiff's protected activity.

105. A prospective declaration is necessary to ensure Plaintiff can continue to engage in protected advocacy without fear of state retaliation.

**COUNT III: Bad-Faith Manufacture of Federal Shield**

106. Plaintiff realleges the facts set forth in ¶¶ 1–105.

107. In 2024, Defendant Brantley and Brett Conway engaged in retaliatory conduct in matters involving Plaintiff and those associated with him. Plaintiff initiated a federal civil-rights action seeking prospective protection from further misconduct. When the challenged behavior ceased, Plaintiff voluntarily dismissed his claims in Case No. 1:24-CV-3436-JPB against Judge Brantley and Conway in good faith **believing Defendants no longer had the ability or opportunity to target Plaintiff.** Plaintiff was apparently wrong and continuing retaliatory conduct has occurred after December 2024. *See e.g.* (Doc. 1-19).

108. Defendant Hansard, acting through informal and undisclosed administrative arrangements, caused a matter in which Plaintiff serves as counsel to be reassigned to Defendant Brantley on October 3, 2025, despite all Defendants

knowing that Judge Brantley was disqualified from presiding over matters involving Plaintiff. This was just two weeks after Plaintiff sent Hansard an Open Records Request for documents and records that "were created between June 1, 2025, and September 19, 2025 . . . related to communications and procedures in connection with the selection and/or request for a senior judge to preside over any matter in the Cobb County Superior Court, including but not limited to such communications between you, your staff and your Office of the Superior Court Administration and any judge and any staff member of the Administrative Judge of the 7th Judicial District." To which Hansard replied "As part of the judicial branch of the state government of Georgia, the Superior Court of Cobb County is not subject to the Georgia Open Records Act (*see Fathers Are Parents Too v. Hunstein*, 415 S.E.2d. 322,323 (Ga. Ct. App. 1992); Op. Ga. Att'y Gen. U95-22; Op. Ga. Att'y Gen. 79-25).Therefore, I cannot provide the information requested." (Doc. 1-20).

109. Defendants' sudden re-involvement in Plaintiff's practice was not compelled by random assignment, judicial necessity, or legitimate case management. Rather, it appears that Judge Brantley's assumption of authority followed a new "agreement" between judges to transfer jurisdiction to him because Plaintiff was involved as counsel. On October 6, 2025, Plaintiff sent a letter to both

Judge Brantley's and Brett Conway's attorneys regarding facts and circumstances indicative of retaliatory motives. (Doc. 1-21). All facts stated in that letter are true.

110. Judge Brantley's refusal to rule on withdrawal is not judicial discretion and is a materially and selectively different manner in which Judge Brantley acted on Plaintiff's motion to withdraw in Fulton County Superior Court case—evidencing even more that it is administrative bad faith to maintain a sham proceeding. This is his third attempt to use a state process (as a weapon) to retaliate for Plaintiff's right to petition and to speech.

111. This maneuver was executed while Defendants were fully aware that Plaintiff could not obtain any state appellate relief to protect his own constitutional rights as a litigant-attorney. Defendants then set a hearing for November 12, 2025, enabling them to assert the existence of an "ongoing proceeding" and thereby advance abstention defenses in this Court. The voluntary abstention doctrine prevents the mooting of this action.

112. Defendants are engaging in administrative self-assignment and jurisdictional manipulation for the express purpose of shielding their retaliatory conduct from federal review and thwarting Plaintiff's access to constitutional remedies.

113. While no substantive judicial orders have yet been issued by Judge Brantley in the *Murray* state court case, the improper reacquisition of authority

over Plaintiff and his client has already forced Plaintiff to either (a) withdraw from representation of Plaintiff's client or (b) endure harassment and sanctions from Judge Brantley.

114. Federal abstention doctrines should not allow state officials to manufacture an "ongoing proceeding" to block § 1983 review or to create a pretextual *Younger* defense. The First and Fourteenth Amendments prohibit such manipulative conduct.

115. Plaintiff's only way to avoid and/or mitigate continual harm from Judge Brantly is with a remedy from this Court and this Court only.

116. Plaintiff seeks a declaration that Defendants' manufacture and exploitation of a state-court proceeding to retaliate behind a curtain of constrained federal review violates the First and Fourteenth Amendments.

117. Plaintiff seeks a declaration that Defendants' conduct in reacquiring jurisdiction over Plaintiff for retaliatory and abstention-gaming purposes violates the United States Constitution and that federal abstention is improper where the "ongoing proceeding" itself is the unconstitutional act.

**COUNT IV – Alternative Injunctive Relief Against Brantley**

118. Plaintiff realleges the facts set forth in ¶¶ 1–117.

119. Defendant Brantley, acting in his official capacity as a Senior Judge of the Superior Court of the State of Georgia, exercises ongoing authority to control

whether Plaintiff, as an attorney, is compelled to appear before him, subjected to his jurisdiction, or retained within proceedings in which Defendant Brantley has asserted authority.

120. Defendant Brantley's refusal to adjudicate Plaintiff's pending Motion to Withdraw, and his continued assertion of jurisdiction over Plaintiff personally despite prior disqualification orders, constitutes administrative and non-adjudicative conduct (not the exercise of protected judicial decision-making), because the refusal involved no discretionary ruling on the merits, no contested issue, and merely preserved jurisdiction over Plaintiff personally.

121. That conduct serves no legitimate adjudicative purpose as to Plaintiff, where Plaintiff's withdrawal motion was unopposed, no adjudication on the merits was required, and the sole effect was to retain personal jurisdiction over Plaintiff. That conduct has the purpose and effect of maintaining coercive jurisdiction over Plaintiff personally, thereby exposing Plaintiff to an objectively intolerable risk of bias and retaliation in violation of the First and Fourteenth Amendments.

122. Plaintiff faces imminent and irreparable constitutional injury absent prospective injunctive relief, because Defendant Brantley retains the present ability to compel Plaintiff's appearance, delay adjudication indefinitely and subject Plaintiff to retaliatory jurisdiction without an appealable order.

123. Plaintiff has no adequate remedy at law. There is no appealable order from Defendant Brantley's refusal to rule, and the forced use of state appellate or recusal mechanisms is itself part of the constitutional injury, not a remedy for it.

124. The balance of equities favors injunctive relief because Plaintiff seeks only a narrow, self-executing injunction prohibiting Defendant Brantley from continuing specific unconstitutional conduct, and does not seek damages, retrospective relief, or federal supervision of any state-court proceeding.

125. The requested injunction would not interfere with any adjudication on the merits, would not dictate how any state-court case must be resolved, and would not require ongoing federal oversight. It would merely prohibit Defendant Brantley from continuing to assert or maintain personal jurisdiction over Plaintiff through administrative non-action in matters where such jurisdiction is constitutionally impermissible.

126. Plaintiff seeks **injunctive** relief <u>in the alternative</u>, and only if the Court determines that declaratory relief is unavailable, insufficient, or declined in the Court's discretion.

**<u>COUNT V</u> – Declaratory Relief Against Defendant Hansard**

127. Plaintiff realleges the facts set forth in ¶¶ 1–127.

128. Defendant Christopher Hansard serves as the Court Administrator for the Cobb County Superior Court and exercises ongoing administrative authority

over judicial-assignment submissions, senior-judge coordination, docket administration, calendaring, and other court-administrative functions that directly affect litigants and attorneys appearing before the Cobb County Superior Court.

129. In performing these functions, Defendant Hansard acts pursuant to authority delegated by the Cobb County Superior Court, including authority exercised at the direction of the chief judge of the Cobb County Superior Court, the Judicial Administrative District, and applicable court rules governing judicial administration.

130. Defendant Hansard's challenged conduct does not arise from county legislative policymaking, county ordinance, or county self-government, but from judicial-administrative functions integral to the operation of Georgia's state court system.

**Actual Controversy 1 – "Home Rule" Bar**

131. An actual and ongoing controversy exists between Plaintiff and Defendants as to whether Defendant Hansard and his subordinates (e.g., judicial staff attorney, judicial administrator, a judge's calendar coordinator, etc.) are protected by Georgia's "Home Rule" from claims in their official capacity only for prospective relief brought pursuant to 42 U.S.C. 1983.

132. Plaintiff believes that Defendant Hansard and his subordinates act under color of state law for purposes of 42 U.S.C. § 1983 when he or his

subordinates perform judicial-administrative functions delegated by other Cobb County Superior Court judges, including the Chief Judge, and the Judicial Administrative District judge, including senior-judge coordination and assignment submissions, and that they are not protected by Georgia's "Home Rule" when only prospective relief is sought, as in this case. Defendants disagree and continue to use Cobb County Superior Court administrative staff to carry out unconstitutional acts against attorneys, litigants and members of the public believing they are protected by Georgia's "Home Rule."

**Actual Controversy 2 – *Monell* Bar**

133. An actual and ongoing controversy exists between Plaintiff and Defendants as to whether Defendant Hansard and his subordinates (e.g., judicial staff attorney, judicial administrator, a judge's calendar coordinator, etc.) are protected by *Monell v. Department of Social Services* from claims in their official capacity only for prospective relief brought pursuant to 42 U.S.C. 1983.

134. Plaintiff believes that Defendant Hansard and his subordinates act under color of state law for purposes of 42 U.S.C. § 1983 when he or his subordinates perform judicial-administrative functions delegated by other Cobb County Superior Court judges, including the Chief Judge, and the Judicial Administrative District judge, including senior-judge coordination and assignment submissions, and that they are not protected by *Monell* when Defendant Hansard or

his subordinates (1) refuse to disclose their policies, and/or (2) claim to be part of the judicial branch of the state government of Georgia and not subject to the Georgia Open Records Act as justification for not disclosing their policies. Defendants disagree and continue to use Cobb County Superior Court administrative staff to carry out unconstitutional acts against attorneys, litigants and members of the public believing they are protected by *Monell* while at the same time not disclosing their county policies and claiming to be "part of the judicial branch" relieving them of any duty to disclose their policies.

135. Defendants' continued assertion that these immunity doctrines categorically bar prospective relief is itself part of the ongoing constitutional injury, because it creates uncertainty regarding the availability of federal remedies, *chills* Plaintiff's protected advocacy and petitioning activity, and enables the continued enforcement of the challenged administrative practices without judicial review.

**Plaintiff's Conflicting Position**

136. Plaintiff only seeks prospective relief. Plaintiff seeks no damages, no retrospective relief, and no relief against Cobb County as a municipal entity under this Count.

137. Plaintiff seeks only a forward-looking declaration clarifying the constitutional status of Defendant Hansard's ongoing administrative authority, in

order to prevent recurring uncertainty, repetitive litigation, and continued *chilling* of Plaintiff's constitutional rights as an attorney who regularly practices before the Cobb County Superior Court.

138. Under *Ex parte Young*, 209 U.S. 123 (1908), and Eleventh Circuit precedent including *Luckey v. Harris*, 860 F.2d 1012 (11th Cir. 1988), prospective official-capacity declaratory relief is available against county court administrators who claim to be part of the state's "judicial branch" alleged to be engaged in ongoing constitutional violations, and such relief is not barred by sovereign immunity, *Monell*, or county home-rule doctrines.

139. A declaratory judgment will resolve the parties' dispute, clarify the governing legal framework, and eliminate the need for repetitive litigation over threshold immunity, abstention, and municipal-liability defenses in future cases arising from Plaintiff's continuing practice in Cobb County. These controversies are not hypothetical but, rather, arise from Defendants' repeated assertion of these doctrines in prior and related litigation and from Plaintiff's ongoing exposure to Defendants' authority and influence.

## VIII. PRAYERS FOR RELIEF

Plaintiff reiterates that he is not requesting this Court to review, reverse, or invalidate any state court judgment or order. The relief sought herein is limited to prospective declaratory relief; and Plaintiff seeks **injunctive** relief against

Defendant Brantley only in the alternative, and only if the Court determines that declaratory relief is unavailable, insufficient, or declined in the Court's discretion. Nothing in these injunctions restrict Defendants from performing legitimate judicial functions in matters where they are constitutionally authorized to and where Plaintiff is not personally subjected to Defendant Brantley's jurisdiction. Plaintiff seeks only prospective relief and no damages.

WHEREFORE, Plaintiff respectfully requests that, under the facts of this case, the Court enter judgment in his favor and grant the following relief where applicable:

**Declaratory Relief as to Defendant Brantley**

a. DECLARE that Defendant Judge Brantley, in his capacity as a senior judge, may not maintain or assert personal jurisdiction over Plaintiff in any state proceeding.

b. DECLARE that where Defendant Brantley's refusal to rule has the purpose or effect of preserving jurisdiction over Plaintiff personally, despite prior disqualification orders, violates Plaintiff's Fourteenth Amendment right to a tribunal free from actual bias or constitutionally intolerable probability of bias.

c. DECLARE that continued subjection of Plaintiff, as an attorney, to mandatory appearances before Judge Brantley constitutes retaliation and a present, ongoing violation of Plaintiff's First Amendment rights.

d. DECLARE that abstention doctrines do not apply where Defendants create or perpetuate a state proceeding for the purpose of retaliating against Plaintiff for his First Amendment activity.

e. DECLARE that Defendant Brantley's use of administrative-judicial authority to compel Plaintiff's personal participation before Judge Brantley, without legitimate adjudicative purpose, violates Plaintiff's right of access to the federal courts.

**Alternative Injunctive Relief as to Defendant Brantley**

Should declaratory relief under 42 U.S.C. § 1983 for any reason be deemed unavailable, Plaintiff requests the following injunctive relief against Defendant Brantley:

f. ENJOIN Defendant George G. Brantley, in his official capacity, from maintaining or asserting personal jurisdiction over Plaintiff through refusal to adjudicate a pending motion to withdraw, or through any other administrative non-adjudicative conduct, in any state proceeding.

g. ENJOIN Defendant Brantley from compelling Plaintiff's appearance or participation in any proceeding where Defendant Brantley's authority over Plaintiff exists solely by virtue of refusal to rule or delay.

**Relief as to Defendant Hansard**

h. ENJOIN Defendant Christopher Hansard from using his authority and influence to assign Defendant Brantley to cases that Plaintiff is a party or an attorney of record to.

i. DECLARE that Defendant Christopher Hansard, when performing court-administrative functions delegated to him by a judicial officer and affecting litigants and attorneys appearing before the Cobb County Superior Court, acts under color of state law for purposes of 42 U.S.C. § 1983.

j. DECLARE that doctrines governing municipal liability, including *Monell v. Department of Social Services*, do not apply to bar prospective relief sought against Defendant Hansard in his official capacity where Hansard is acting pursuant to authority delegated to him by a judicial officer and no damages or county liability are sought.

k. DECLARE that Georgia's county Home-Rule provisions do not immunize or otherwise bar prospective declaratory relief against Defendant Hansard for ongoing judicial-administrative conduct delegated to him or otherwise governed by state judicial authority.

l. DECLARE that Plaintiff may seek prospective constitutional relief against Defendant Hansard for ongoing or future court-administrative conduct without pleading or proving a county policy, custom, or practice under *Monell*

**Additional Relief**

m. AWARD Plaintiff his costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

n. GRANT such other and further prospective relief as the Court deems just and proper.

This submission was prepared using Times New Roman 14-point font in compliance with L. Rule 5.1(C).

Submitted this 30th day of March, 2026.

Respectfully submitted,

/s/

Matthew D. McMaster
Plaintiff, *Pro se*
GA Bar No. 218044

SERVICE ADDRESS
12 Powder Springs St.
Suite 230
Marietta, GA 30064
(770) 362-6490 (cell)
(800) 890-3981 (office)
mdmcmaster@mcmasterlegal.com

## CERTIFICATE OF SERVICE

**I hereby certify that the foregoing submission was prepared using Times New Roman 14-point font in compliance with L. Rule 5.1(C)** and that I have caused a copy of the foregoing Response to be deposited in the United States Mail, postage prepaid, addressed to the Defendant's attorneys pursuant to Rule 5(b)(1) as follows:

**Keith Pridgen**
Georgia Department of Law
40 Capitol Square SW
Atlanta, GA 30334

**Melissa Tatum**
Office of the Cobb County Attorney
100 Cherokee Street, Suite 350
Marietta, Georgia 30090

Respectfully submitted this 30th day of March 2026.

/s/____________________
Matthew D. McMaster
*Plaintiff, Pro se*
GA Bar No. 218044

1095 New Haven Dr. SW
Marietta, GA 30064
(770) 362-6490 (cell)
(800) 890-3981 (office)
mdmcmaster@mcmasterlegal.com

12 Powder Springs St., Suite 230
Marietta, GA 30064
(800) 890-3981 (office)
(800) 890-3981 (fax)