UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MATTHEW D. MCMASTER,<br>Plaintiff,<br>v.<br>GEORGE G. BRANTLEY,<br>Defendant. | CIVIL ACTION NO.<br>1:25-CV-06726-JPB |

**ORDER**

This matter is before the Court on George G. Brantley's ("Defendant") Motion to Strike or in the Alternative Renewed Motion to Dismiss [Doc. 17]. This Court finds as follows:

**BACKGROUND**

According to the operative Complaint, Matthew D. McMaster ("Plaintiff") is a licensed attorney who lives in Cobb County, Georgia. [Doc. 14, p. 3]. Defendant is a senior judge on the Superior Court of Cobb County. Id. Plaintiff has now filed several cases against Cobb County judges and court staff, raising various claims of bias and retaliation against him. See McMaster v. Poole, No. 1:24-CV-03436-JPB (N.D. Ga.); McMaster v. Smith, No. 1:25-CV-04077-JPB (N.D. Ga.). In this case, Plaintiff seeks prospective relief to prevent Defendant from presiding over

Plaintiff's cases in the future. Id. at 47–48. Plaintiff claims that Defendant's conduct has violated the Fourteenth Amendment and the First Amendment. Id. at 31–37.[1]

The facts alleged in the Amended Complaint are at times difficult to follow. At its most basic, the Amended Complaint alleges that Plaintiff has been a vocal critic of Cobb County Superior Court judges. Id. at 5. Plaintiff has also been a candidate for different judgeships in Cobb County in multiple elections. Id. at 7–8. He alleges that, in retaliation for statements he made about superior court judges, Defendant has "displayed hostility" towards him during court proceedings. Id. at 5. Plaintiff contends that Defendant has refused to rule on motions, improperly handled recusal motions and continues to "insert[ ] himself" into Plaintiff's cases. Id. at 2.

[1] While the Fourteenth Amendment and First Amendment claims are listed as Count I and Count II, respectively, the Amended Complaint asserts two other counts against Defendant. Count III is entitled "Bad-Faith Manufacture of Federal Shield." [Doc. 14, p. 37]. Rather than asserting a separate claim, this count appears to argue that abstention doctrines should not apply to this case. Id. at 37–40. Count IV does not assert a separate claim either, instead requesting injunctive relief as an alternative remedy to declaratory relief. Id. at 40–42.

Plaintiff, proceeding *pro se*,[2] initiated this case on November 24, 2025, against both Defendant and Christopher Hansard, a court administrator. [Doc. 1]. Plaintiff then filed an Amended Complaint on March 30, 2026, in response to motions to dismiss. [Doc. 14]. Defendant filed a motion to either strike the Amended Complaint as untimely or, in the alternative, to dismiss. [Doc. 17]. Mr. Hansard filed a Motion to Dismiss as well. [Doc. 18]. Shortly thereafter, Plaintiff voluntarily dismissed Mr. Hansard from this action. [Doc. 20]; [Doc. 21]. Defendant's motion is now ripe for review.

**DISCUSSION**

Defendant first seeks to strike the Amended Complaint as untimely. Defendant's original motion to dismiss was served on Plaintiff via mail on March 4, 2026. [Doc. 9, p. 4]. Under Federal Rule of Civil Procedure 15(a)(1)(B), Plaintiff had twenty-one days after service of the motion to dismiss to amend his Complaint as of right. That time period was then extended a further three days because Plaintiff does not have electronic filing access and must be served by mail. See Fed. R. Civ. P. 6(d). Twenty-four days later was March 28, 2026. Because that

[2] Though proceeding *pro se*, the Court does not construe Plaintiff's pleadings liberally because he is a licensed lawyer. See Bowers v. Bd. of Regents of the Univ. Sys. of Ga., 509 F. App'x 906, 908 n.1 (11th Cir. 2013) (citing Olivares v. Martin, 555 F.2d 1192, 1194 n.1 (5th Cir. 1977)).

date was a Saturday, the deadline was further extended to March 30, 2026. See Fed. R. Civ. P. 6(a)(1)(C). Plaintiff filed his Amended Complaint on March 30, 2026. [Doc. 14]. His Amended Complaint was therefore timely filed, and the Motion to Strike is consequently **DENIED**.

Defendant next raises a variety of arguments in favor of dismissal. The Court begins with Defendant's standing argument since it implicates this Court's subject-matter jurisdiction. See Ladies Mem'l Ass'n, Inc. v. City of Pensacola, 34 F.4th 988, 994 (11th Cir. 2022) ("[S]tanding is a part of subject matter jurisdiction."); Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.").

## I. Standing

### A. Legal Standard for Rule 12(b)(1) Motion to Dismiss

A party may challenge the court's subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Challenges to subject-matter jurisdiction under Rule 12(b)(1) take two forms. The first form is a facial attack, which questions subject-matter jurisdiction based on the allegations in the complaint alone. Morrison v. Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir.

2003). "On a facial attack, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion—the court must consider the allegations of the complaint to be true." Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990); see also Stalley ex rel. U.S. Orlando Reg'l Healthcare Sys., Inc., 524 F.3d 1229, 1233 (11th Cir. 2008) (facial attack permits court to consider pleading and attached exhibits). The second form is a factual attack, which contests jurisdiction "in fact, irrespective of the pleadings. In resolving a factual attack, the district court may consider extrinsic evidence such as testimony and affidavits." Morrison, 323 F.3d at 925 n.5 (citation omitted). In this case, Defendant appears to make a facial attack.[3]

Additionally, "it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." Univ. of S. Ala. v. Am. Tobacco Co., 168 F.3d 405, 410 (11th Cir. 1999).

---

[3] Defendant does not explicitly state whether it is making a facial or factual challenge to jurisdiction. However, the portion of Defendant's motion dedicated to the issue of standing references "Ex. A" on three occasions. [Doc. 17-1, pp. 5, 12–13]. Yet there are no exhibits attached to the motion, and the document that Defendant appears to reference is not included in Exhibit A to the original Complaint. [Doc. 1-1]. Neither does there appear to be any other documents labeled as "Exhibit A" elsewhere on the docket. Without Defendant providing this document, the Court cannot consider it as part of a factual attack. Since there are no other references in Defendant's brief to external documents or facts other than those presented in the Amended Complaint, the Court construes the jurisdictional challenge as a facial one.

### B. Standing Principles

Article III of the United States Constitution "confers limited authority on the judicial branch." Nicklaw v. CitiMortgage, Inc., 839 F.3d 998, 1001 (11th Cir. 2016). "Although the Constitution does not fully explain what is meant by '[t]he judicial Power of the United States,' it does specify that this power extends only to 'Cases' and 'Controversies.'" Spokeo, Inc. v. Robins, 578 U.S. 330, 337 (2016) (citation omitted) (quoting U.S. Const. art. III, §§ 1, 2). The Supreme Court has held that "[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Raines v. Byrd, 521 U.S. 811, 818 (1997) (quoting Simon v. E. Ky. Welfare Rts. Org., 426 U.S. 26, 37 (1976)).

Defendant contends that there is no case or controversy here because Plaintiff lacks standing. The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." Spokeo, 578 U.S. at 338. In the absence of standing, "a court is not free to opine in an advisory capacity about the merits of a plaintiff's claim." Corbett v. Transp. Sec. Admin., 930 F.3d 1225, 1232 (11th Cir. 2019) (quoting Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005)). At an "irreducible

constitutional minimum," to establish standing, a plaintiff must establish the following prerequisites:

> (1) the plaintiff has suffered an "injury in fact" — an invasion of a judicially cognizable interest, which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) there be a causal connection between that injury and the conduct complained of — the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) it be likely, not merely speculative, that the injury will be redressed by a favorable decision.

Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)).

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 578 U.S. at 339 (quoting Lujan, 504 U.S. at 560); see also Corbett, 930 F.3d at 1232 (holding that the injury-in-fact requirement may be met where a plaintiff shows "that he 'has sustained or is immediately in danger of sustaining some direct injury'" (quoting Lynch v. Baxley, 744 F.2d 1452, 1456 (11th Cir. 1984))).

The plaintiff bears the burden of establishing the elements of standing. Spokeo, 578 U.S. at 338. At the pleading stage, a plaintiff must "clearly allege facts demonstrating each element." Id. (citation modified). Additionally, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." Town of Chester v. Laroe Ests., Inc., 581 U.S. 433,

439 (2017) (quoting Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008)). Here, Plaintiff alleges two claims with distinct kinds of injury. The Court will consider each in turn.

**C. Due Process Injury**

Plaintiff asserts that Defendant, a judge sitting on the Superior Court of Cobb County, has a duty to recuse from Plaintiff's cases. The Amended Complaint contends that Defendant poses an "intolerable risk of bias" in cases where Plaintiff appears as counsel. [Doc. 14, p. 32]. Plaintiff says that this bias means that prospective relief is necessary "to prevent future violations of Plaintiff's Fourteenth Amendment rights." Id. at 35.

The due process right to an impartial tribunal, however, is a right that belongs to a litigant—not to the litigant's lawyer. See Logan v. Zimmerman Brush Co., 455 U.S. 422, 429 (1982) ("The Court traditionally has held that the Due Process Clauses protect civil *litigants* who seek recourse in the courts." (emphasis added)); Franklin v. McCaughtry, 398 F.3d 955, 959 (7th Cir. 2005) ("The Due Process Clause guarantees *litigants* an impartial judge . . . ." (emphasis added)); cf. U.S. Dep't of Labor v. Triplett, 494 U.S. 715, 720 (1990) (applying third-party standing to lawyer's claim based on due process right to counsel); Kowalski v. Tesmer, 543 U.S. 125, 129–30 (2004) (same).

The Amended Complaint is phrased in terms of "Plaintiff's" due process right to an impartial tribunal. Since there is no allegation that Plaintiff appeared before Defendant as a party, however, Plaintiff has not alleged any injury to his own due process right. Absent such an injury, Plaintiff lacks standing as to this claim.[4]

**D. First Amendment Injury**

The Complaint also alleges that Defendant's conduct towards Plaintiff is retaliation in response to Plaintiff's campaigns and public statements criticizing Cobb County judges.

The Eleventh Circuit Court of Appeals has said, in the First Amendment context, "[l]itigants who are being 'chilled from engaging in constitutional activity' . . . suffer a discrete harm . . . , and that harm creates the basis for our jurisdiction."

---

[4] The Amended Complaint refers to the doctrine of third-party standing, though it is not entirely clear that Plaintiff intends to rely on that doctrine with respect to his due process claim. To establish third-party standing, a plaintiff must demonstrate: (1) an injury-in-fact to himself that gives him a "sufficiently concrete interest" in the dispute, (2) a close relationship to the third-party and (3) a hindrance to the third-party's ability to assert its own interests. Young Apartments, Inc. v. Town of Jupiter, 529 F.3d 1027, 1042 (11th Cir. 2008). Plaintiff asserts that he has third-party standing based on the rights of his former clients. The Amended Complaint fails to plausibly assert that these individuals are hindered in asserting their own interests, however, because the only allegations on that point are conclusory. See [Doc. 14, p. 22] ("Plaintiffs clients and associates face substantial hindrances to asserting their own rights— . . . the affected individuals are compelled to proceed without counsel because other attorneys do not want to be retaliated against and/or the individuals are deterred from objecting due to fear of escalating retaliation.").

Dana's R.R. Supply v. Att'y Gen., Fla., 807 F.3d 1235, 1241 (11th Cir. 2015). For a First Amendment retaliation claim, a plaintiff must establish that retaliation would chill his speech by being objectively likely to "deter a person of ordinary firmness from exercising his or her First Amendment rights." Ranize v. Town of Lady Lake, No. 5:11-CV-646-OC-32TBS, 2012 WL 4856749, at *2 (M.D. Fla. Oct. 12, 2012); see also Bennett v. Hendrix, 423 F.3d 1247, 1254 (11th Cir. 2005) ("The objective 'ordinary firmness' test requires plaintiffs to allege that the retaliatory acts of the defendants adversely affected them, which is an injury sufficiently adverse to give rise to Article III standing."). Importantly, "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm" for Article III purposes. Laird v. Tatum, 408 U.S. 1, 13–14 (1972).

Plaintiff describes a few specific incidents that he contends show Defendant retaliated against him. The Court finds that some of these incidents involve conduct that would deter a person of ordinary firmness from engaging in speech while others do not.

To begin, Plaintiff alleges that Defendant "displayed hostility toward Plaintiff" during hearings in January 2024. [Doc. 14, p. 5]. According to the Amended Complaint, Defendant "made remarks . . . in open court such as, 'You're

playing games with me, Counsel. Listen to me. You know me. You know what I will do. Do you not? Is that door locked?' and 'Don't dance with me.'" Id. at 6. As to this incident, the Complaint goes on to say that Defendant "warned Plaintiff to 'be prepared to bring a toothbrush,' implying potential overnight detention." Id. At another hearing, Defendant "stated in open court: 'I am not happy with you. I told you just to brief the standing issue. You gave me the whole sink.'" Id. The Amended Complaint alleges that this "comment in open court was without merit." Id.

In the Court's view, the statements that suggest counsel might be jailed for criminal contempt—if made with the intent to retaliate against protected speech—are sufficient to deter a person of ordinary firmness from engaging in further speech. The statements were made by a judge in a courtroom with the power to follow through on the threat. And "[t]he threat of arrest is the quintessential retaliatory conduct that would deter a person of ordinary firmness from exercising First Amendment rights." Turner v. Williams, 65 F.4th 564, 580 (11th Cir. 2023). Any chill caused by those statements could thus be an injury-in-fact for Article III standing purposes.

The remaining incidents highlighted in the Amended Complaint, on the other hand, would not deter a person of ordinary firmness from engaging in First

Amendment activity. For example, the Amended Complaint also alleges that Plaintiff "filed multiple recusal motions" in March and April of 2024 and that "all were denied by [Defendant] ***without*** **re-assignment**." [Doc. 14, p. 7]. It goes on to say that those "motions could not be appealed . . . because Plaintiff was forced . . . to withdraw from . . . his client due to additional hostile and retaliatory conduct by [Defendant]." Id.

However, the Georgia Uniform Superior Court Rules make clear that a judge can deny a recusal motion without assigning it to another judge. Indeed, the proper resolution of such a motion is for the judge against whom recusal is sought to rule on the motion first. Ga. Unif. Super. Ct. R. 25.3. Plaintiff does not explain how a judge following the relevant procedural rules could somehow deter a person of ordinary firmness from engaging in protected speech.

Next, the Complaint describes an incident in June or July 2024. This time, Plaintiff was not counsel of record, but it appears he was attending hearings in a case where Defendant was the presiding judge. While Defendant had "permitted Plaintiff to record judicial proceedings" in the past, he "abruptly reversed his recording allowance, denied Plaintiff's next recording request . . . , and signed an order . . . that stated" Plaintiff's requests were "harassing." Id. at 9–10. After denying the request to record, Defendant told courtroom law enforcement to check

Plaintiff's phone to ensure he was not recording. Id. at 11. Plaintiff chose to leave the courtroom rather than show his device was not recording. Id.

Refusing permission to record court proceedings would not deter a person of ordinary firmness from engaging in First Amendment activity. In general, recording Georgia Superior Court proceedings is not guaranteed. Ga. Unif. Super. Ct. R. 22(C)(3) ("Parties and spectators may use recording devices to record proceedings only as specifically authorized by the court . . . ."); see also id. at R. 22(G)(1). And here, the specific orders referenced in the Amended Complaint reflect case-specific determinations that counseled against allowing recording in two cases—not a blanket ban on recording activity. [Doc. 1-8]. Plaintiff does not explain how this would deter someone from engaging in speech.

Next, Plaintiff contends that a December 4, 2024 order recused the entire Cobb County Superior Court bench from one of his cases. On October 3, 2025, however, Defendant was assigned to one of Plaintiff's cases. [Doc. 14, p. 16]. The day after Defendant was appointed, Plaintiff filed an "intent to withdraw" from that case. Id. at 17. On October 21, 2025, he filed a motion to withdraw from representation. Id. According to the Complaint, Defendant "refused to rule on the motion" and scheduled a hearing for November 12, 2025. Id. That hearing never

occurred, however, because the plaintiff in that case sued Defendant, presumably leading to his recusal. Id.

This incident also fails as an injury-in-fact. As Plaintiff's own exhibits demonstrate, the blanket recusal order issued in December 4, 2024, was later rescinded. [Doc. 1-12, pp. 29, 40]. And a September 12, 2025 order noted that, while all active Cobb County judges had subsequently decided to recuse individually, senior judges were not recused and could still be assigned to the case. [Doc. 1-13]. Thus, when Defendant (a senior judge) was appointed to the case a few weeks later, there was no order in place prohibiting that assignment. Plaintiff does not explain how this appointment would deter him from engaging in speech, especially when the appointment did not violate any court order.

**E. Remaining Standing Issues**

As recounted above, the chill caused by the threatened sanction of criminal contempt is an injury-in-fact. However, with respect to injunctive or declaratory relief, "[w]hen a plaintiff cannot show that an injury is likely to occur immediately, the plaintiff does not have standing to seek prospective relief even if he has suffered a past injury." Corbett, 930 F.3d at 1232 (quoting 31 Foster Children v. Bush, 329 F.3d 1255, 1265 (11th Cir. 2003)). Here, the Amended Complaint alleges that Plaintiff regularly appears in Defendant's court. This fact, combined

with his past injury, is enough to satisfy the Court that a threat of future injury is sufficiently imminent for standing purposes.

With this prong of the standing inquiry satisfied, the Court now turns to causation and redressability. There is no doubt from the Amended Complaint that Defendant is the one who made the relevant statements and therefore is the cause of any injury. And the threat of continued retaliation would be redressed if this Court entered an order declaring that Defendant could no longer preside in Plaintiff's cases. With these elements also satisfied, the Court concludes that—as to the First Amendment retaliation claim—the allegations in Plaintiff's Amended Complaint suffice to establish Article III standing.

**IV. Younger Abstention**

Defendant next contends that the Court should abstain from the merits of this case under the doctrine articulated in Younger v. Harris, 401 U.S. 37 (1971). "The Younger doctrine bars federal court intervention in state noncriminal proceedings where the proceedings constitute an ongoing state judicial proceeding, the proceedings implicate important state interests, and there is an adequate opportunity in the state proceedings to raise constitutional challenges." Adams v. Florida, 185 F. App'x 816, 816–17 (11th Cir. 2006) (per curiam) (citing 31 Foster Children, 329 F.3d at 1274).

Defendant says that the declaratory relief sought "specifically stem[s] from [Plaintiff's] underlying case." [Doc. 17-1, p. 14]. This ignores, however, that Plaintiff has since withdrawn from representation in that case. [Doc. 19, p. 22]. Thus, there is no presently ongoing state proceeding with which any prospective relief in this case would interfere. The Court therefore need not abstain under Younger. Cf. Schultz v. State, 42 F.4th 1298, 1312 (11th Cir. 2022) (holding Younger did not apply because plaintiff "is not asking us to enjoin any" state proceeding and the relief requested "does not require enjoining or even interfering with any ongoing or imminent" proceeding).

With these preliminary issues resolved, the Court now turns to the merits of Plaintiff's First Amendment retaliation claim.[5]

[5] Defendant raises the affirmative defenses of judicial immunity and res judicata. While it often makes sense to address defenses like these before analyzing the merits, courts are "not compelled to address" such defenses "before reaching the merits because these defenses are not jurisdictional." Morphew v. Chaffee Cnty., 172 F.4th 802, 824 n. 21 (10th Cir. 2026); see also, e.g., Jones v. Citimortgage, Inc., 666 F. App'x 766, 777 (11th Cir. 2016) (assuming without deciding that judge lacked judicial immunity and affirming district court on other ground). Here, addressing the merits is the more straightforward path. Cf. Does v. Whitmer, 69 F.4th 300, 305 (6th Cir. 2023) (stating that "we are free to address the merits before sovereign immunity" because "[r]esolving this case on the merits is more straightforward" (citation modified)).

## V. Merits of First Amendment Retaliation Claim

### A. Legal Standard

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." Traylor v. P'ship Title Co., LLC, 491 F. App'x 988, 989 (11th Cir. 2012). Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although detailed factual allegations are not necessarily required, the pleading must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A complaint is insufficient if it only tenders naked assertions devoid of further factual enhancement. Id. Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (citation omitted). At bottom, the complaint must contain more than "an unadorned, the defendant-unlawfully-harmed-me accusation," and must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, a

court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations. Id.

Accordingly, evaluation of a motion to dismiss requires two steps: (1) a court must eliminate any allegations in the pleading that are merely legal conclusions, and (2) where there are remaining well-pleaded factual allegations, a court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

**B. Analysis**

To state a retaliation claim, a plaintiff "must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." Bennett, 423 F.3d at 1250. Upon review, Plaintiff's complaint has not alleged sufficient facts to state a claim as to the third element.

The Amended Complaint alleges that Plaintiff publicly criticized the Cobb County Superior Court judges between 2021 and 2024. [Doc. 14, p. 5]. He also ran for office in 2022 and 2024. Id. at 7–8. Plaintiff alleges that Defendant's retaliatory conduct began when Defendant threatened to jail him for contempt and otherwise "displayed hostility" towards him in January 2024. Id. at 5.

As to these incidents, the Court concludes that these facts are insufficient to plausibly establish the third element of a retaliation claim. To establish the third element of a First Amendment retaliation claim—a causal connection—a plaintiff must allege that the protected conduct was the "motivating factor behind the defendants' actions." Bailey v. City of Douglasville, No. 13-CV-00941, 2015 U.S. Dist. LEXIS 184983, at *29 (N.D. Ga. Feb. 4, 2015) (quoting Smith v. Mosley, 532 F.3d 1270, 1278 (11th Cir. 2008)). There is no indication that any of Plaintiff's speech was the motivating factor behind Defendant's actions here.

The incident Plaintiff describes does not, in isolation, show that Defendant was biased or retaliated against Plaintiff. The Amended Complaint provides little detail about the context in which this incident occurred. Defendant's statements could have been retaliatory. Yet they could also have been entirely proper; judges sometimes must admonish lawyers who misbehave in court. Thus, without more, the mere fact this incident occurred does not establish that Defendant retaliated against Plaintiff or harbored bias against him. See Iqbal, 556 U.S. at 678 ("The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of

the line between possibility and plausibility of entitlement to relief." (citation modified)).

It seems that the Amended Complaint's theory is that the temporal proximity between Defendant's actions and Plaintiff's protected speech suggests retaliation. The Court disagrees. As noted above, Plaintiff's speech began in 2021 and continued throughout 2024. Defendant had a case with Plaintiff as early as 2022, yet the allegedly retaliatory incident did not occur until January 2024. Sometimes temporal proximity alone may be sufficient to plausibly allege retaliation, but "mere temporal proximity, without more, must be 'very close'" to the relevant First Amendment activity. Laird v. Bd. of Cnty. Comm'rs, No. 3:15cv394, 2017 WL 1147472, at *7 (N.D. Fla. Mar. 26, 2017) (quoting Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1364 (11th Cir. 2007)). Here, years of speech passed before any allegedly retaliatory acts occurred. That is insufficient to plausibly establish that Defendant's actions were retaliatory. See id. (too remote where seven months between speech and alleged retaliation); Turner v. Williams, No. 3:19-CV-641, 2020 WL 1904016, at *10 (M.D. Fla. Apr. 17, 2020) (temporally remote where plaintiff told others that he would run for office in 2016 and alleged retaliation occurred in 2017 and 2018).

The Court thus concludes that Plaintiff has failed to state a claim, and his request for declaratory relief or, in the alternative, injunctive relief necessarily fails. See Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1097 (11th Cir. 2004) ("For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim)."); id. at 1098 ("[I]f the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise.").

## CONCLUSION

For the foregoing reasons, the Motion to Strike or Dismiss [Doc. 17] is **GRANTED IN PART**. Plaintiff's claim based on violation of his right to due process is **DISMISSED** without prejudice for lack of standing. Plaintiff's claim based on First Amendment retaliation is **DISMISSED** for failure to state a claim. The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 9th day of October, 2026.

**J. P. BOULEE**
United States District Judge